[No. 15353-0-II.  Division Two.  July 25, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. DUSTIN B. DEITCHLER, *Appellant*.

*Mark L. Yelish* and *Crawford, McGilliard, Peterson & Yelish,* for appellant (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Pamela B. Loginsky, Deputy,* for respondent.

MORGAN, C.J. — Dustin Deitchler appeals his conviction for second degree burglary. We reverse.

The Port Orchard police station has a large plywood cabinet along one wall. The cabinet is divided into evidence lockers of various sizes. The locker pertinent here was locked at material times. It was 10 inches high, 10 inches wide, and perhaps 2 feet deep.[1] It had a slot in the front so that property could be inserted, but not removed, while the locker was locked. Measuring 6 inches horizontally by 1 inch vertically, the slot was big enough to accommodate adult fingers, but not big enough to accommodate an adult hand.

On a shelf near the plywood cabinet, the police department kept three aluminum rods that could be screwed together. When assembled, they formed a longer rod used to clean shotgun barrels.

On September 12, 1989, Deitchler and Margie Fenton were both in the police station. Deitchler was doing janitorial work as a way of fulfilling community service hours to which he had previously been sentenced. Fenton was a records employee of the police department.

About 11 a.m., Fenton saw Deitchler enter the area in which the evidence lockers were located. When he remained out of sight for an unusually long period of time, she walked over to investigate, and she observed him with part of his hand inserted into the slot of the evidence locker described above. She asked what he was doing, and he said he was curious about the contents of the locker. He then left the area.

Fenton reported her observations to Sergeant James Duncan. Duncan opened the locker and found, in addition to the evidence that was supposed to be in it, two of the aluminum rods described above. He also observed that one of the evidence bags in the locker had a "tear mark" in the bottom.

---

[1] Photos admitted into evidence make it appear that the depth of the locker was between 1 and 2 feet. However, there was no express testimony to that effect.

When Duncan interviewed Deitchler, Deitchler said that he had been curious about what was in the lockers, and that he "was just trying to see what was in there".[2] He also said he had used "two prongs" taken "[o]ff the shelf" to manipulate a bag inside the locker.[3] He apologized for his conduct.

The next day, the State charged Deitchler with one count of second degree burglary. It alleged that Deitchler,

> on or about the 12th day of September, 1989, with intent to commit a crime against a person or property therein, entered or remained unlawfully in a building, to-wit: the Port Orchard Police Department evidence locker; contrary to Revised Code of Washington 9A.52.030(1).

The case proceeded to a bench trial. Fenton and Duncan were the only witnesses. After their testimony, Deitchler moved to dismiss on grounds the evidence locker was not a "building" that could be burglarized. He based his motion on RCW 9A.52.030(1) and RCW 9A.04.110(5). RCW 9A.52.030(1) provides:

> A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle[.]

RCW 9A.04.110(5) provides:

> "Building", in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods; each unit of a building consisting of two or more units separately secured or occupied is a separate building[.]

The trial court ruled the evidence locker was "a structure used for the deposit of goods", and thus a "building" within the meaning of RCW 9A.04.110(5). The trial court also ruled the evidence locker was a "unit . . . separately secured", and thus a "separate building" within the meaning of RCW 9A.04.110(5). The trial court denied the motion to dismiss and ultimately convicted Deitchler as charged.

---

[2]Report of Proceedings, at 27.

[3]Report of Proceedings, at 27-28.

On appeal, Deitchler reiterates his argument that the evidence locker was not a "building" for purposes of burglary. We agree.

■ RCW 9A.04.110(5) has two parts, one preceding and one following the semicolon. The first deals with "buildings" not within a larger "building". The second deals with "buildings" within a larger building. According to the second, a structure or space within a larger building will be a "separate building" if the larger building has "two or more units separately secured or occupied", and the structure or space being considered is one of those "units". By negative implication, a structure or space within a larger building will *not* be a "separate building" *unless* the larger building has "two or more units separately secured or occupied", and the structure or space being considered is one of those "units".

Here, the evidence locker was a smaller space or structure located within the larger police station. As far as the record shows, the police station was occupied by a single tenant, and thus was not a building consisting of two or more units separately secured or occupied. *State v. Thomson*, 71 Wn. App. 634, 861 P.2d 492 (1993). As a result, the evidence locker was neither a "unit" of the police station nor a "separate building" inside the police station, and a charge of burglarizing the evidence locker cannot be sustained.

In reaching this result, we do not consider whether a burglary charge might have been sustained if the State had charged Deitchler with remaining unlawfully in the larger police station.[4] *See State v. Collins*, 110 Wn.2d 253, 751 P.2d 837 (1988); *State v. Rio*, 38 Wn.2d 446, 230 P.2d 308, *cert. denied*, 342 U.S. 867 (1951); *Thomson.* Nor do we consider whether the evidence locker might have been a "structure used for . . . the use, sale or deposit of goods", *see* RCW 9A.04.110(5), if it had not been located within the confines of a larger building. *But see State v. Roadhs*, 71 Wn.2d 705,

---

[4]We limit this statement to "remaining unlawfully", because it is clear that Deitchler "entered" the larger police station with permission.

708, 430 P.2d 586 (1967);[5] Jeffrey F. Ghent, Annotation, *What is "Building" or "House" Within Burglary or Breaking and Entering Statute,* 68 A.L.R.4th 425 (1989).[6] We conclude

---

[5]Construing a former burglary statute, the *Roadhs* court said:

The term "structure" in its ordinary meaning includes "any production or piece of work artificially built up or composed of parts joined together in some definite manner." 2 Anderson, Wharton's Criminal Law and Procedure § 428 (1957). As is clearly apparent, the term "structure" is quite broad in its application. It could, for example apply equally to a building or an apple box. Since it is doubtful that the legislature intended the word "structure" to have such broad application, we must resort to a second principle of statutory construction . . ..
This principle requires that more general terms in a statute or ordinance be interpreted in a manner consistent with and analogous to the more specific terms in the statute or ordinance.

*Roadhs,* 71 Wn.2d at 708. Other Washington cases consider burglary in the context of a structure large enough to accommodate a human being, *e.g., State v. Tyson,* 33 Wn. App. 859, 863, 658 P.2d 55 (semitrailer "was a separate detachable container or structure from the truck tractor unit . . . used to draw it"; burglary conviction upheld), *review denied,* 99 Wn.2d 1023 (1983); *State v. Davis,* 60 Wn.2d 233, 235, 373 P.2d 128 (1962) (cigar stand separated from recreation center by canvas curtain was "room or other structure"; burglary conviction upheld); *Roadhs* (fence enclosing blacktopped equipment storage area, 150 by 200 to 400 feet; burglary conviction upheld); *State v. Livengood,* 14 Wn. App. 203, 540 P.2d 480 (1975) (same as *Roadhs); State v. Brenner,* 53 Wn. App. 367, 768 P.2d 509 (1989) (fence enclosing auto wrecking yard; burglary conviction upheld), but we are not aware of a Washington case that considers burglary in the context of a structure too small to accommodate a human being.

[6]Cases from other jurisdictions are decided under a variety of statutes and are not always consistent. When compared, however, they arguably support the idea that a "structure" too small for a human being to live in, or to carry on business in, is not a "structure" or "building" for purposes of burglary. Cases finding lack of a structure or building include *United States v. Breen,* 36 C.M.R. 156 (C.M.A. 1966) (sailor's personal locker not a "structure" for purposes of unlawful entry); *People v. Knight,* 204 Cal. App. 3d 1420, 1423, 252 Cal. Rptr. 17, 19-20 (1988) (large tool box on wheels not a "building" for purposes of burglary — "If this is a 'building,' then so is a clothes dryer"); *State v. Williams,* 409 N.W.2d 187, 188 (Iowa 1987) (according to statute, space "too small or not designed to allow a person to physically enter or occupy it" not sufficient for burglary; however, statute inapplicable where defendant entered enclosed bed of pickup truck); *State v. Bybee,* 109 N.M. 44, 46, 781 P.2d 316, 318 (Ct. App. 1989) (soft drink vending machine not a "structure" for purposes of burglary statute); *People v. Lamphere,* 219 A.D. 422, 219 N.Y.S. 390 (1927) (gas pump not a "building" for purposes of burglary); *Stoddard v. State,* 120 Tex. Crim. 55, 47 S.W.2d 281 (1932) (portable dynamite box, 3 feet by 3 feet by 3-1/2 feet, not a "structure" or "building" for purposes of burglary); *State v. Crites,* 110 W. Va. 36, 37, 156 S.E. 847 (1931) ("structure into which an adult human being could not enter erect" not a "building" for purposes of burglary); 12A C.J.S. *Burglary* § 27, at 211 (1980).

that Deitchler may well be guilty of a crime other than burglary, *e.g.*, attempted theft, but that he is not guilty of burglary.

Reversed with directions to dismiss.

ALEXANDER and SEINFELD, JJ., concur.

Review denied at 125 Wn.2d 1015 (1995).

In contrast, cases finding a structure or building include *United States v. Wickersham,* 10 M.J. 615, 616 (A.F.C.M.R. 1980) (for purposes of unlawful entry, "structure" is place that "might reasonably be capable of being substantially entered by a human being"), *aff'd,* 14 M.J. 404 (C.M.A. 1983); *People v. Buyle,* 22 Cal. App. 2d 143, 70 P.2d 955 (1937) (underground powder magazine, 6 feet 6 inches high, 7 feet wide, 36 feet long, constituted "building" for purposes of burglary); *In re Welfare of R.O.H.,* 444 N.W.2d 294 (Minn. Ct. App. 1989) (ministorage unit constituted "building" for purposes of burglary); *State v. Handley,* 116 Or. App. 591, 843 P.2d 456 (1992) (carport storage locker 4 feet wide, 9 feet long, 7 feet high, constituted "building" for purposes of burglary); *State v. Barker,* 86 Or. App. 394, 739 P.2d 1045 (1987) (miniwarehouse self-storage locker constituted "building" for purposes of burglary); *Ash v. State,* 555 P.2d 221 (Wyo. 1976) ("small" enclosure providing room for person to move around constituted "building" for purposes of burglary), *cert. denied,* 434 U.S. 842 (1977).