**William Thomas SMITH, Jr.,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

· No. 94–155.

Supreme Court of Wyoming.

Sept. 15, 1995.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender; Wyoming Defender Aid Program, Gerald M. Gallivan, Director; Gayle Blakeley, Student Intern., for appellant.

Joseph B. Meyer, Attorney General; Sylvia Lee Hackl, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Prosecution Assistance Program, Theodore E. Lauer, Director, and Lisa M. Quast, Student Intern., for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The question in this case is whether a semitrailer from which the wheels have been removed and which is used for storage at a construction site is a building within the meaning of WYO.STAT. § 6–3–301(a) (1988). William Thomas Smith, Jr. (Smith) was charged with one count of burglary, specifically, entering a building with intent to commit larceny by entering a construction trailer and stealing various items from it. ·Smith filed a motion to dismiss asserting a trailer is not a building. After that motion was denied, he accepted a plea bargain and pleaded guilty, reserving as an issue for appeal the question of whether the case should be dismissed because a trailer is not a building. We hold the trailer is a building within WYO. STAT. § 6–3–301(a), and the Judgment and Sentence entered in the trial court is affirmed.

In his Brief of Appellant, Smith presents this statement of the issues:

Whether the trial court erred in finding the Appellant guilty of burglary of a "building" where the supposed "building" was in fact a semi-trailer which was without wheels and sitting on the ground, and was without its back doors, exposing its interior and contents to the elements and to any casual passerby?

In the Brief of Appellee, the State offers this statement of the issue:

Did the district court correctly determine that the structure that Appellant entered with intent to commit larceny therein was a building within the meaning of the Wyoming burglary statute, § 6–3–301(a)?

Not long after midnight, on January 10, 1993, an officer of the Sweetwater County Sheriff's Department observed footprints in the snow leading to a fabrication plant locat-

ed within a quarter mile of the Conoco Truck Stop. The footprints led around that abandoned building and, his suspicion being aroused, the officer decided to continue following the tracks. He followed the footprints across the parking lot of the truck stop to a nearby fireworks stand, then to a pile of metal and steel in the lot, then to the truck stop building itself and, ultimately, to two semitrailers located on the lot.

The footprints went up to the first semitrailer, and the officer observed one of its doors was ajar. He then followed the tracks to the second semitrailer, where the footprints went inside. He observed "multiple tracks of the same boot prints inside that trailer" on snow that had blown in. The snow was present because either one or both of the back doors were missing from that trailer.

The tracks emerged from the second trailer, and the officer saw that "there was a large room fan and a package of paper towels laying the—that had been placed in the fresh snow there." It appeared to the officer that the footprints had gone back and forth to the second trailer either two or three times. The officer then followed the tracks to a two-track road where he observed additional impressions, which appeared to be those of a small bag and a one-gallon plastic jug, which had been set down in the snow. The tracks ultimately led the officer to Space No. 5 in the Western Hills Trailer Park, the mobile home where Smith resided with his girlfriend.

The officer knocked on the door at Space No. 5, and Smith's girlfriend admitted him. At that point, he observed a gallon container, a gym bag, and boots laying on the floor with snow still on them. The girlfriend told the officer the gallon container and the gym bag were not there before she went to sleep at around 9:30 p.m. the evening before. The officer also observed that the boots had a gouge on the sole of the heel of one boot, which was consistent with the footprints he had followed to the trailer space.

Smith was charged with one count of burglary on June 1, 1993. The information stated:

Comes now * * *, Deputy County and Prosecuting Attorney for Sweetwater County and gives the court to understand William Thomas Smith, Jr. on or about the 9th day of January, 1993 in the County of Sweetwater in the State of Wyoming did unlawfully and feloniously enter in a **building,** without authority and with the intent to commit larceny therein, in that WILLIAM THOMAS SMITH, JR. did enter a construction trailer located on the lot of the Conoco Truck Plaza and stole various items therein and without authority of the owner: Contrary to W.S. Section 6–3–301(a) and (b)—BURGLARY, a felony. (Emphasis added.)

The pertinent statute provides as follows:

(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

(b) Except as provided in subsection (c) of this section, burglary is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

Wyo.Stat. § 6–3–301 (1988).

At his arraignment on January 4, 1994, Smith entered a plea of not guilty. On April 1, 1994, Smith filed a motion to dismiss in which he asserted the semitrailer was not a "building," and it could not have been the object of a burglary. A hearing was conducted on April 21, 1994, and the motion was denied. On May 18, 1994, Smith then changed his plea to guilty, reserving the right to appeal the issue of whether the semitrailer was a "building" within the meaning of Wyo.Stat. § 6–3–301. Smith was sentenced to a term of not less than eighteen, nor more than thirty, months in the state penitentiary; but the execution of the sentence was suspended, and he was placed on supervised probation for a period of two years. Smith appeals his conviction based upon his contention that the semitrailer was not a building.

■ The parties argue the single issue of whether a semitrailer from which the wheels

had been removed and which was without doors constitutes a "building" for purposes of applying Wyoming's burglary statute. If this semitrailer is not a building, Smith was improperly convicted because one of the elements of the crime is that he enter or remain in a "building."

The meaning of "building" within Wyoming's burglary statute was considered extensively in *Ash v. State*, 555 P.2d 221, *reh'g denied*, 560 P.2d 369 (Wyo.1977), *cert. denied*, 434 U.S. 842, 98 S.Ct. 139, 54 L.Ed.2d 106 (1977). The form of the statute at that point in time referred to "any building."[1] At the hearing on his motions, Smith's attorney suggested there is a difference between "any building" and "a building," which is the phrase in the current statute. Counsel argued this to be a significant distinction because this court in *Ash* interpreted the word "any" as a broadly inclusive term, and the attorney believed that "a" as used in the current statute provides a more narrow definition of a building. The specific language in *Ash*, 555 P.2d at 226, was:

> By use of the word "any" it would appear that the legislative intent was to include all such structures [including a wooden frame covered with plastic] within its ambit.

Smith's argument that some distinction is suggested in statutory interpretation because of the use of the article "a" instead of the word "any" is not sound. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1 (1993) describes "a" as an indefinite article, which is defined as follows:

> 1—used as a function word before most singular nouns other than proper and mass nouns when the individual in question is undetermined, unidentified, or unspecified * * *.

In the same work, at 97, the word "any" is defined as:

> 1: one indifferently out of more than two: one or some indiscriminately of whatever kind: **a:** one or another: this, that, or the other—used as a function word esp. in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category

but whichever one chance may select < did you experience ˜trouble > < if ˜defect appears > < ask ˜man you meet > **b:** one, no matter what one: EVERY—used as a function word esp. in assertions and denials to indicate one that is selected without restriction or limitation of choice < ˜child would know that > < forbidden to enter house > **c:** one or some of whatever kind or sort; *esp.:* one or some however imperfect—used as a function word to indicate one that is selected with indifference to quality < ˜plan is better than no plan > * * *.

When used in legislation as a function word, we are unable to discern any legislative intent to distinguish "a building" from "any building."

The structure involved in *Ash* was a wooden frame, placed on a slab of new cement and attached to an adjoining building. The frame then was enclosed with plastic. Ash contended that plastic sheeting could not be equated to the conventional materials used to construct "walls" or a "roof." He argued that a wooden frame, covered by plastic, was not a building within the meaning of the statute. This court rejected Ash's contention and concluded walls or roofs need not be constructed of any special materials. Instead, the court adopted a functional approach to determining what a building might be and did not limit the nature of its materials as long as the basic purpose of the structure was served by the materials used.

In *Ash*, 555 P.2d at 227, we addressed an assertion that a plastic covering did not constitute "walls" or a "roof," concluding the statute did not require any special or particular material, and we said:

> Particularly is this true in an ever-changing world in which new materials and methods of construction are a part of progress. Wagon sheets or canvass enclosures have been held to be walls, *Favro v. State*, 39 Tex.Cr. 452, 46 S.W. 932; and "the building must be protected from intrusion or trespass by some sort of material. It may be stone, wood, wire, or cloth,"

---

1. *See* WYO.STAT. § 6–129 (1957).

*McCabe v. State,* 1 Ga.App. 719, 58 S.E. 277, 278.

The case of *People v. Blair,* 52 Ill.2d 371, 288 N.E.2d 443, 445, contains a particularly workable definition. The Illinois burglary statute, like Wyoming's, contains no statutory definition of a "building." That case involved the theft of a coin box in a car-wash, which was a structure with bays or stalls covered with a roof, with a concrete floor and sidewalks; the ends were open. In holding this was a building under the statute the court said:

> "This court in construing the pre–1961 burglary statute has stated: 'A "building," within this act, has been defined as a fabric, structure or edifice, such as a house, church, shop, or the like, designed for the habitation of men or animals or for the shelter of property; a structure. [Citing authorities.] * * *'"

The Colorado Supreme Court, in the case of *Sanchez v. People,* 142 Colo. 58, 349 P.2d 561, 562, 78 A.L.R.2d 775, adopted a definition approved by the California courts when it said:

> " * * * we believe it was the legislative intent that a building is 'a structure which has a capacity to contain, and is designed for the habitation of man or animals, or the sheltering of property', * * *"

Adopting the functional analysis from *Ash,*[2] it is clear this semitrailer would constitute a building under the statute. It is designed for the shelter of property in accordance with the persuasive authorities quoted with approval in *Ash.* The semitrailer, which was the subject of the burglary charged in this instance, was planted firmly on the ground without wheels. It was being used for purposes of storing materials in connection with the construction project.

We find support in authority from other jurisdictions. In *People v. Simien,* 671 P.2d 1021 (Colo.Ct.App.1983), a semitrailer was held to be a building for purposes of the burglary statute because it had been moved to a construction site and left there for storing roofing materials. The Colorado burglary statute did contain a definition of a building that is parallel to the functional definition this court adopted in *Ash.* In *People v. Ruiz,* 133 Ill.App.3d 1065, 89 Ill.Dec. 189, 479 N.E.2d 1195 (1985), a burglary conviction was affirmed with respect to a semitrailer that was still sitting on its wheels and supported by rolled down jack stands. It could be returned to mobility, but no tractor was present at the time of the entry. The court invoked a functional analysis similar to the one in *Ash.* In *State v. Bost,* 55 N.C.App. 612, 286 S.E.2d 632 (1982), *review denied,* 305 N.C. 588, 292 S.E.2d 572 (1982), a "blocked up" semitrailer at a bridge construction site was held to attain the status of a "building" under a breaking and entering statute which adopted a functional definition, again, similar to the one this court approved in *Ash.* We hold the semitrailer was a "building," and the entry by Smith was chargeable as a burglary under WYO.STAT. § 6–3–301.

Smith also suggests by citing authority relating to the absence of a complete enclosure that the semitrailer was not a building. In *Ash,* this court cited with approval and quoted from *People v. Blair,* 52 Ill.2d 371, 288 N.E.2d 443 (1972), which involved a car wash that was structured with bays or stalls covered with a roof on a concrete floor. There were sidewalls, but the ends were open. It was held to be a building. In *State v. Bronson,* 259 N.W.2d 465 (Minn.1977), building crews were converting a basketball arena into an ice-skating arena. In the course of the construction, a wall had been torn out at one end, and entry was gained through this opening. The Minnesota Supreme Court held that, even though the structure was open at one end, it was a "building" since it afforded shelter to the construction people working inside it. In *People v. Picaroni,* 131 Cal.App.2d 612, 281 P.2d 45 (1955), a garage was held to be a "building," even though entry was gained through a raised garage door, because it was

2. Recently, we invoked a functional analysis in construing the meaning of the word "witness" in WYO.STAT. § 6–5–305(a) (1988). *Smith v. State,* No. 94–245, 1995 WL 515237 — P.2d —— (Wyo. Aug. 31, 1995).

used for sheltering property. In light of our approval of *Blair* in *Ash,* we are persuaded the approach in these other cases is apt. We hold the semitrailer was not disqualified from its status as a building by the absence of its doors.

In summary, we hold that a semitrailer which is used for the storage of property is a building for purposes of WYO.STAT. § 6–3–301 even though it lacks doors. The Judgment and Sentence entered in the trial court is affirmed.