Hannah Dawn PAUGH, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 98–358.

Supreme Court of Wyoming.

Aug. 2, 2000.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; T. Alan Elrod, Assistant Appellate Counsel; and Diane Lozano, Assistant Public Defender.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY,* GOLDEN, and HILL, JJ.

THOMAS, Justice.

Hannah Dawn Paugh (Paugh) presents this Court with a definitional question concerning the burglary statute. Her assertion is that a locked three-foot fishing reel display case in a department store is not a "separately secured or occupied portion" of a "building" within the meaning of Wyoming's burglary statute, Wyo. Stat. Ann. § 6–3–301 (Lexis 1999).[1] Paugh contends that the display case does not satisfy the statutory definition because it is not a "portion" of a "building," and her conviction of attempted burglary should be reversed. Other jurisdictions, which have addressed the "separately secured or occupied portion" language, have held that a display case of this nature does not fall within the burglary statute, and their view is supported by commentators and reason. We adopt the rationale of those authorities, based on the common law and statutory development of the crime of burglary, and we hold that to qualify as "separately secured or occupied," a room or container must be large enough to be occupied by a human being. It was impossible for the fishing reel display case to be the object of an attempted burglary by Paugh, and we reverse her conviction.

This statement of the issues is found in the Brief of Appellant, filed for Paugh:

Is a display case sitting on a counter, not attached to the building in any way, a portion of the building for the purposes of Wyoming's burglary statute?

a) Was the evidence that the State presented at trial insufficient, as a matter of law, to show Appellant aided and abetted an attempted burglary, because the State failed to show a burglary was attempted?

b) Did the district court improperly instruct the jury on the meaning of a "separately secured portion" of a building within the meaning of Wyoming's burglary statute?

This Statement of the Issue is found in the Brief of Appellee, filed on behalf of the State:

Does a locked storage and display case lose its character as a "separately secured portion of a building," for purposes of Wyoming's burglary statute, by virtue of its not being fastened to the building?

In February of 1998, Paugh and three other individuals went to the K–Mart store in Gillette. One of them, Kenneth Watson, intended to steal some fishing reels, but he needed assistance to help him avoid detection. Paugh agreed to be Watson's lookout. The fishing reels, with a retail price of $144.00 each, were in a locked, freestanding case, about three feet long, which sat on a counter in the sporting goods section of the store. Watson went to the hardware section of the store; took a pair of pliers from a package; and then returned to the sporting goods section intending to "pop the lock off"

---

* Retired June 2, 2000.

1. Wyo. Stat. Ann. § 6–3–301 provides, in pertinent part:

(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

(b) Except as provided in subsection (c) of this section, burglary is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

the fishing reel case. He attempted to "jimmy the lock" intermittently for about ten minutes. After Paugh told Watson that he was being observed by store security personnel, he abandoned his attempts to break into the case, left the pliers in the linen section, and walked toward the front doors of the store. Watson was detained by store security personnel for stealing the pliers, but when Watson showed the security personnel where the pliers were, they released him. Paugh and another woman also walked out of the store at that time.

After releasing Watson, a security guard examined the lock on the fishing reel case. The lock was mangled and bent, and the guard called the sheriff's department. In the parking lot, a store security guard identified Watson, and the sheriff's office asked Watson to come back into the store where, after further interrogation, he was arrested. The investigating officer later located Paugh in Moorcroft with the other two individuals who were involved in the scheme. Paugh confessed to her role in the attempted theft, and she was charged with aiding and abetting in the commission of attempted burglary, by acting as a lookout, in violation of Wyo. Stat. Ann § 6–3–301(a) and (b) and Wyo. Stat. Ann § 6–1–201(Lexis 1999).[2]

Following a two-day trial in August of 1998, Paugh's attorney filed a Motion for Judgment of Acquittal. Her attorney also challenged a jury instruction on the ground that unless affixed to the building, the display case could not be deemed a "separately secured" portion of a building and could not be the object of an attempted burglary. The challenged jury instruction stated:

> An enclosure within a building which is open to the public is a "separately secured portion" of the building within the meaning of the burglary statute if, from all of the attendant facts and circumstances, a rea-

sonable person would conclude that the building owner or occupant sought to restrict the public's access to items within it.

The jury returned its verdict finding Paugh "guilty" on August 18, 1998. The district court imposed a split sentence under Wyo. Stat. Ann. § 7–13–107 (Lexis 1999), pursuant to which Paugh was to serve ninety days in the Campbell County Detention Center and then be subject to supervised probation for sixty months. The district court stayed Paugh's ninety-day incarceration pending the outcome of this appeal, but ordered the execution of the supervised probation period. Paugh timely appealed her conviction.

We have defined the obligation of a district court with respect to jury instructions in a criminal case in this way:

> The duty of the trial court is to present in the instructions to the jury the law applicable to the issues actually raised by the evidence. *Hatheway v. State*, 623 P.2d 741, 743 (Wyo.1981). It is well settled that a trial court is given wide latitude in instructing the jury; and as long as the instructions correctly state the law and the entire charge to the jury adequately covers the issues, reversible error will not be found. *Scadden v. State*, 732 P.2d 1036, 1053 (Wyo.1987). The instructions are to be viewed in their entirety and read together to determine if this obligation is met. *Ostrowski v. State*, 665 P.2d 471, 487 (Wyo.1983).

*Baier v. State*, 891 P.2d 754, 756 (Wyo.1995). The standard that requires a jury instruction to be a correct statement of the law had endured for almost seventy-five years. *Richey v. State*, 28 Wyo. 117, 205 P. 304, 309 (1922).

The accuracy of an instruction to the jury is purely a question of law which we review *de novo*. If the instruction fails to

---

2. Wyo. Stat. Ann. § 6–1–201 provides:
   (a) A person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.
   (b) An accessory before the fact:
   (i) May be indicted, informed against, tried and convicted as if he were a principal;
   (ii) May be indicted, informed against, tried and convicted either before or after and whether or not the principal offender is indicted, informed against, tried or convicted; and
   (iii) Upon conviction, is subject to the same punishment and penalties as are prescribed by law for the punishment of the principal.

correctly state the law, reversible error exists. *Baier*, 891 P.2d at 756. In this case, to determine whether the jury was properly instructed, it is necessary to interpret the meaning of the phrase "separately secured or occupied portion thereof" found in the burglary statute. This is a question of law, and we review it *de novo*. *Ryan v. State*, 988 P.2d 46, 63 (Wyo.1999); *French v. Amax Coal West*, 960 P.2d 1023, 1027 (Wyo.1998).

Paugh argues that the word "portion" in the phrase "separately secured or occupied portion thereof" refers to a part of the whole. She contends this language requires that the enclosure referred to in the challenged jury instruction must be attached to the building or occupied structure, in essence a fixture. Because the display case was moveable and not attached to the building in any way, she insists the display case was not a "portion" of the building. In response, the State asserts that the language should be broadly interpreted. The State argues for rejection of the "fixture rule," asserted by Paugh, and urges instead a broad, functional approach under which the burglary statute would encompass a range of enclosures. *See Smith v. State*, 902 P.2d 712, 714–15 (Wyo.1995) and *Ash v. State*, 555 P.2d 221, 227 (Wyo.1976), *cert. denied* 434 U.S. 842, 98 S.Ct. 139, 54 L.Ed.2d 106 (1977). We conclude that neither argument is persuasive in light of the evolution of the burglary statute from its common law inception.

At common law, burglary had as its essential purpose the protection of the habitation of an individual. In a remarkable article, Professor Lauer has traced the history of the common law offense of burglary through the several legislative enactments in Wyoming. Theodore E. Lauer, *Burglary in Wyoming*, 32 Land & Water L.Rev. 721 (1997). In England, the essence of the offense was an invasion of the dwelling, both at common law and in subsequent legislative enactments. *Id.* at 723–30. This same concept was imported to America with later statutes expanding the protection from dwelling house to other kinds of structures, including business buildings. *Id.* at 730–32. In 1962, the Model Penal Code was promulgated by the American Law Institute as a summarization

of prevailing notions regarding criminal offenses. Lauer, *supra*, 32 Land & Water L.Rev. at 732. Article 221 of the Model Penal Code addresses the crime of burglary, and it is defined in Section 221.1(1):

> "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. It is an affirmative defense to prosecution for burglary that the building or structure was abandoned."

Lauer, *supra*, 32 Land & Water L.Rev. at 732.

A parallel statement of the propositions is found in C.S. Parnell, Annotation, *Burglary: Outbuildings or the Like as Part of "Dwelling House,"* 43 A.L.R.2d 831, 834–35 (1955):

> It is evident that the offense of burglary at common law was considered one aimed at the security of the habitation rather than against property. That is to say, it was the circumstance of midnight terror aimed toward a man or his family who were in rightful repose in the sanctuary of the home, that was punished, and not the fact that the intended felony was successful. Such attempted immunity extended to a man's dwelling or mansion house has been said to be attributable to the early common-law principle that a man's home is his castle. The jealousy with which the law guarded against any infringement of this ancient right of peaceful habitation is best illustrated by the severe penalties which at common law were assessed against a person convicted of burglary, even though the enterprise, except for the essential elements of breaking and entering a mansion house or dwelling house at night with intent to commit a felony therein, was unsuccessful.

(Footnotes omitted.) Rollin M. Perkins and Ronald N. Boyce, *Criminal Law* 255–56 (3d ed.1982) states:

> That every man's house is "his castle" is a concept that has been echoed down through the ages and the social interest in the security of the "castle" has its origin in

antiquity; for just as an animal or a bird resents any intrusion into its place of abode, so no doubt did primitive man. The terms commonly used to indicate the place are "dwelling" or "dwelling house," but the "word 'dwelling' imports a human habitation," and as a matter of common law, burglary is strictly an offense against the habitation.

(Footnotes omitted.) *See Kanaras v. State,* 54 Md.App. 568, 460 A.2d 61, 69 (1983), *cert. granted,* 350 Md. 280, 711 A.2d 871 (1998), *reversed on other grounds,* 357 Md. 170, 742 A.2d 508 (1999).[3]

Beginning in territorial days, Wyoming recognized not only the importance of protecting people in their homes, but in their businesses as well. The earliest reported Wyoming burglary case, *Territory of Wyoming v. Conley,* 2 Wyo. 331, 333 (1880), involved a railroad handcar house. The majority agreed a handcar house fell within the definition of "any other closed enclosure."[4] *Id.* at 334–35.

In Wyoming, as in many states, the development of case law addressed the meaning of the term "building." Seventy years later, this Court again considered the "building" portion of the burglary statute.[5] In *State v. Crouse,* 69 Wyo. 85, 237 P.2d 481, 484–85 (1951), we held that a nearly collapsed powerhouse with no roof, one end and two sides absent, did not qualify as a building. Justice Blume concluded that although a functioning powerhouse may be a building, the destroyed powerhouse in this case was not a building. *Id.* at 485. This Court espoused the view that a house or building must have walls on all sides and a roof. *Id.* at 484. Thus, the common law concern with burglary as relating to human habitation continued.

By 1957, the burglary statute, Wyo. Stat. Ann. § 6–129 (1957), had been amended to read:

(A) Whoever, intentionally enters, or attempts to enter, any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than fourteen (14) years:

(1) Any building or dwelling; or

(2) An enclosed railroad car; or

(3) An enclosed portion of any automobile, vehicle, or aircraft; or

(4) A locked enclosed cargo portion of a truck or trailer; or

(5) A room within any of the above.

\* \* \*

(C) For the purpose of this section, entry into a place during the time when it is open to the general public is with consent.

---

**3.** Several states have recognized the increased seriousness of burglary when it is a dwelling of habitation versus a building or a business. This is based on the concept that the more serious burglary charge is intended to protect people while in places where they are likely to be living and sleeping overnight as opposed to protecting property in buildings such as stores, businesses offices or garages. *See State v. Cox,* 826 P.2d 656, 662 (Utah App.1992); N.M. Stat. Ann. § 30–16–3 (Michie 1994) (burglary in third degree involves dwelling house whereas burglary in fourth degree involves any other structure); N.Y. Penal Law § 140.20 (McKinney 1999) (burglary in third degree involves building whereas burglary in second degree involves dwelling); Tex.Code Ann. 30.01 (West 1994) (habitation versus building); and Utah Code Ann. § 76–6–202 (1998) (burglary in third degree unless involves dwelling, in which event the felony is second degree).

**4.** Section 38 at 254 of the Criminal Laws of Wyoming (1876) defined burglary:

Every person who shall willfully and maliciously and forcibly break and enter, or willful-

ly and maliciously without force (the door or any window being open), enter into any dwelling house, kitchen, office, shop, storehouse, warehouse, malt house, stilling house, banking house, hotel, saloon, mill, pottery, factory, water craft, church or meeting house, railroad car, or any other close enclosure \* \* \* shall be deemed guilty of burglary \* \* \*.

**5.** At that time, Wyo. Comp. St. § 9–309 (1945) read:

Whoever, at any time, breaks and enters, or attempts to break and enter, into any dwelling house, automobile or other motor vehicle, kitchen, smokehouse, outhouse, shop, office, storehouse, warehouse, mill, distillery, brewery, pottery, factory, barn, stable, schoolhouse, church, meeting-house, or building used for the purpose of religious worship, car-factory, tool house, freight house, station house, depot, railroad car, sheep wagon, tent, court house, or other public building, or other buildings whatsoever, with intent to commit a felony, or with intent to steal property of any value, is guilty of burglary.

Under this version of the statute, this Court addressed the term "building" in *Ash*, 555 P.2d at 226–27. *Ash* involved entry of an enclosure attached to a liquor store, which consisted of a temporary wooden frame covered by plastic sheeting and a cement floor. *Id.* at 226. The enclosure had room for a person to move around. This satisfied the term "any building" because it served the basic purpose of an enclosure. *Id.* at 227. The distinction whether something qualifies as a building is not on the materials or methods of construction, but whether the building is " 'protected from intrusion or trespass by some sort of material.' " *Id.* (*quoting McCabe v. State*, 1 Ga.App. 719, 58 S.E. 277, 278 (1907)).

In 1973, the law was amended to include a locked or sealed building:

> Whoever, at any time, unlawfully breaks and enters, or attempts to unlawfully break and enter, into any locked or sealed dwelling house, office, storehouse, warehouse, church, meeting house, or building used for the purpose of religious worship, car factory, tool house, freight house, station house, depot, railroad car, cave or cavern, courthouse or other public building, or other building whatsoever, is guilty of a misdemeanor, and shall be imprisoned in the county jail not more than one year or [fined] a fine of not more than $500 or both.

Wyo. Stat. Ann. § 6–130 (Michie Cum.Supp. 1975). The following year, this Court struck as unconstitutional Wyo. Stat. Ann. § 6–130 for vagueness because it failed to distinguish between essentially innocent conduct, breaking and entry for legal excuse, and criminally culpable conduct, criminal breaking and entry. *State v. Stern*, 526 P.2d 344, 348 (Wyo. 1974).

In amending the burglary statute by the enactment of the Wyoming Criminal Code of 1982, the legislature enacted the "separately secured or occupied portion" language. Effective July 1, 1983, the statute provided:

**6–3–301. Burglary.**

> (a) A person is guilty of burglary if, without authority, he enters or surreptitiously remains in a building, occupied structure or motorized vehicle, or sepa-

rately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

> \* \* \*

> (c) A person may not be convicted both for burglary and for the offense which it was his purpose to commit after the entry or for an attempt to commit that offense, unless the additional offense is a violent felony.

Wyo. Sess. Laws ch. 75, § 3 (1982). Prior to its effective date, the legislature further amended Wyo. Stat. Ann. § 6–3–301(a), so that it read:

> (a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or felony therein.

Wyo. Sess. Laws ch. 171, § 3 (1983). The parallel nature of some phrases with the Model Penal Code is obvious.

In 1985, Wyo. Stat. Ann. § 6–3–301 was amended to read as it currently does. We decided *Smith*, 902 P.2d at 713 under this version of the statute. *Smith* involved a semi-trailer, without wheels and without back doors, used for storage at a construction site. *Id.* at 712. Even though it was not completely enclosed by four walls and a roof, we held the semi-trailer was a building and therefore could be burglarized. *Id.* at 715. In *Smith*, we adopted the functional analysis from *Ash* that since the semi-trailer was planted firmly on the ground and was designed to shelter property, this Court held it qualified as a building under the statute. *Id.* at 715.

The Wyoming legislature has not defined the term "separately secured or occupied portion thereof," and we look to other sources to consider what this phrase means. Our statute adopted this language from the Model Penal Code § 221.1(1). The Model Penal Code defines "occupied structure" as "any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." Model Penal Code § 221.0 at 60. The comments to the Model Penal Code § 221.1 explain that the

premises protected by the burglary statute include "a building or occupied structure, or separately secured or occupied portion thereof." Model Penal Code § 221.1 cmt. 3(b) at 71. The Model Penal Code comment explains that this language "takes care of the situation of apartment houses, office buildings, hotels, steamships with a series of private cabins, etc., where occupancy is by unit." Model Penal Code § 221.1 cmt. 3(b) at 73. Implicit from this listing of examples is the proposition that a separately secured portion of a building be able to accommodate the presence of a human being.

Although Wyo. Stat. Ann. § 6–3–301 also does not define "occupied structure," it is defined elsewhere in the statutes to mean a structure or vehicle whether or not a person is actually present:

> (A) Where any person lives or carries on business or other calling;
>
> (B) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation;
>
> (C) Which is used for overnight accommodation of persons; or
>
> (D) In which a person may reasonably be expected to be present.

Wyo. Stat. Ann. § 6–1–104(a)(v) (Michie 1997). In our view, there is very little reason to believe that the phrase "separately secured" would be intended to describe any different portion than the phrase "separately * * * occupied * * *."

This common law concern for protecting places occupied by people has also been recognized by several states. We consider, for example, the treatment of this issue in Washington, Iowa, Montana, and New Mexico. In *State v. Deitchler*, 75 Wash.App. 134, 876 P.2d 970, 971–72 (1994), the Washington Court of Appeals held that a container similar to the fishing reel display case at issue

here did not qualify as a building. In *Deitchler*, the defendant placed his hand inside an evidence locker located at a police station. The locker was ten inches high, ten inches wide, and perhaps two feet deep with a six-inch long and one-inch wide slot. *Id.* at 970. The trial court ruled the evidence locker was a unit separately secured, thus a separate building under Wash. Rev.Code § 9A.04.110(5).[6] *Deitchler*, 876 P.2d at 971. On appeal, the court determined "[b]y negative implication, [that] a structure or space within a larger building will ***not*** be a 'separate building' ***unless*** the larger building has 'two or more units separately secured or occupied[,]' and the structure or space being considered is one of those 'units[.]' " *Id.* The court concluded the evidence locker was neither a unit of the police station nor separate building, therefore the burglary charge could not be sustained. *Id.* at 971–72. In the recent case of *State v. Miller*, 90 Wash.App. 720, 954 P.2d 925, 930 (1998), the Washington Court of Appeals held that a structure too small for a human being to live in or do business in was not a "building" or a "structure" under the burglary statute. Miller entered a 24–hour self-service car wash and broke several coin boxes and took the money. *Id.* at 927. Because the car wash was open to the public, his entry and remaining was lawful, therefore he could not be charged for burglary. *Id.* Although the state maintained Miller remained unlawfully when he formed the intent to commit a crime, the court rejected this reasoning because it was unsupported by case law or statute. *Id.* at 928. Intent was irrelevant and did not establish unlawful entry. To support the holding, the court cited to *Deitchler* where the judge "concluded that a structure or space within a large building is not a separate building unless the large building has 'two or more units separately secured or occupied' and the structure or space being considered is one of

---

6. " '[I]f, with intent to commit a crime against a person or property therein, [one] enters or remains unlawfully in a building other than a vehicle [or a dwelling,]' " " '[a] person is guilty of burglary in the second degree' " under Wash. Rev.Code § 9A.52.030(1) (West 1998). *Deitchler*, 876 P.2d at 971. Aside from its ordinary meaning, a "building" " 'includes any dwelling, fenced area, vehicle, railway car, cargo container, or

any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods; each unit of a building consisting of two or more units ***separately secured or occupied is a separate building.*** ' " *Deitchler*, 876 P.2d at 971 (*quoting* Wash. Rev.Code § 9A.04.110(5) (West 1998)) (emphasis added).

those 'units.'" *Miller*, 954 P.2d at 930 (*quoting Deitchler*, 876 P.2d at 971). Under this interpretation, the separate stalls and coin boxes in *Miller* occupied by a single tenant and not consisting of two or more units separately secured or occupied, did not substantiate the burglary charge. *Miller*, 954 P.2d at 930. Finally, we note "burglary is ordinarily considered only in the context of a structure large enough to accommodate a human being." *Miller*, 954 P.2d at 930; *Deitchler*, 876 P.2d at 970. "A structure too small for a human being to live in or do business in is not a 'building' or 'structure' for the purpose of burglary." *Miller*, 954 P.2d at 930; *Deitchler*, 876 P.2d at 971.

By statute, Iowa specifically addresses the storage and safekeeping of anything of value. Iowa Code Ann. § 702.12 (West 1993) includes within the phrase in the burglary statute "occupied structure" overnight accommodation, storage or safekeeping for anything of value, whether or not a person is actually present. This section continues:

> However, for purposes of Chapter 713, a box, chest, safe, changer, or other object or device which is adapted or used for the deposit or storage of anything of value but which is too small or not designed to allow a person to physically enter or occupy it is not an "occupied structure."

Iowa Code Ann. § 702.12. In *State v. Williams*, 409 N.W.2d 187, 187 (Iowa 1987), the defendant was convicted of burglary of a topper-enclosed pickup truck because it qualified as an occupied structure under the burglary statute. The camper shell was three feet high, with side windows and a rear door. *Id.* at 187. Williams entered the shell through the back door and handed two tires to a co-defendant outside. That constituted burglary. *Id.* Williams readily conceded the enclosed pickup truck bed was sufficiently large enough to allow a person to enter or occupy it, thus he could not qualify under the

size exception in Iowa Code Ann. § 702.12. *Williams*, 409 N.W.2d at 188–89. Based on the plain language of the statute and the defendant's concession, the court affirmed the burglary conviction. *Id.* at 189.

Under the Montana burglary statute, "[a] person commits the offense of burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein." Mont.Code Ann. § 45–6–204(1) (1999). Previous statutes established that to constitute burglary, an act must have been directed against an occupied structure. The new code is not as technically restrictive, but it does require the structure entered to be occupied, suited for human occupancy or night lodging of persons or for carrying on business. This in effect limits the burglary statute's application to those situations where human life is at the greatest risk. Recently, the Montana Supreme Court affirmed a conviction because a prison's maximum-security cellblock satisfied the definition of "occupied structure" under the Montana statute. *State v. Gollehon*, 262 Mont. 293, 864 P.2d 1257, 1260–61 (1993). Gollehon maintained the unit was "one single building, and that no sections of the building constitute a separate occupied structure apart from the remainder of the unit." *Id.* at 1261. Therefore, he contended, he could not be charged with burglary. The Montana Supreme Court emphasized that each separately secured block was intended for human occupancy and although no prisoners were previously convicted for burglary within the prison, the plain and clear language contemplates that burglary can occur if there is unauthorized entry within the block. *Id.*

New Mexico has extensively addressed burglary, specifically defining the term "structure."[7] In *State v. Sanchez*, 105 N.M. 619, 735 P.2d 536, 537, *cert. denied*, 105 N.M. 618, 735 P.2d 535 (1987), two defendants, Landlee and Sanchez, challenged their bur-

---

**7.** The New Mexico burglary statute provides:

> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> A. Any person who, without authorization, enters a dwelling house with intent to commit

any felony or theft therein is guilty of a third degree felony.

> B. Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

N.M. Stat. Ann. § 30–16–3 (Michie 1994)

glary convictions, arguing entry into separately secured portions of buildings otherwise open to the public did not qualify as unauthorized entry. Landlee entered the loading dock area of an auto parts retail store without authorization. Sanchez entered a hospital office where he stole a purse containing cash, credit cards and other valuables. *Id.* at 537. The New Mexico Court of Appeals upheld the convictions applying a more liberal and broader interpretation, securing property and protecting possessory rights. *Id.* at 537–39.

Two years later, the New Mexico Court of Appeals held a soft drink vending machine did not satisfy the definition of a structure in the burglary statute. *State v. Bybee,* 109 N.M. 44, 781 P.2d 316, 318 (1989). Three vending machines, each with a locked door and money change box, were outside a grocery store and not anchored or attached to the building. *Id.* at 316. Looking to common law and the expansion of the term "structure" to include possessory rights and define prohibited space, the court determined the legislature did not intend a soft drink machine to fall within the burglary statute. *Id.* at 318. "Although the legislature may include specific objects or places under the proscription of the burglary statute, the court may not enlarge or amend the statute by judicial fiat." *Id.* at 319. Absent specific language in the statute evincing the intent to include such structures under the statute, the court was unable to affirm the conviction. *Id.* at 318.

In *State v. Gregory,* 117 N.M. 104, 869 P.2d 292, 292 (1993), *cert. denied,* 117 N.M. 215, 870 P.2d 753 (1994), Gregory entered a post office lobby open to the public and removed mail from a mailbox. The back of each box opened into the post office mail sorting room, which was not open to the public. *Id.* at 292. The court held that removing mail from a post office box constituted burglary because the box opened into the sorting room for the mail, which the court held was a separately secured area. *Id.* at 293. The court also rejected the defendant's argument that it was physically impossible to enter the sorting room through the mailbox opening, therefore burglary was impossible. *Id.* Under New Mexico law, the size of the box is irrelevant. *Id. See State v. Jacobs,* 102 N.M. 801, 701 P.2d 400, 401–04 (1985) (burglary accomplished by lowering bomb through roof of vent). Unlike the vending machine in *Bybee,* the post office box was not an isolated structure and encompassed both the boxes and the sorting area, thus the burglary occurred when Gregory entered the separately secured area. *Gregory,* 869 P.2d at 293.

■ Based on the similar language and intent of the four states discussed above, we conclude that the "separately secured" language is considered in conjunction with the "occupied portion," and to be susceptible to burglary the "separately secured" portion must be large enough to be occupied by a human being. This is consistent with the original purpose of the common law to protect people.

We are urged by Paugh to adopt the "fixture rule" espoused by Professor Lauer in his article. Lauer, *supra,* 32 Land & Water L.Rev. at 758. We are satisfied that the adoption of the fixture rule would afford disparate treatment to similar containers depending upon the fortuity of attachment to the structure. This would result in disparate treatment of individuals who were involved in essentially the same misconduct. This we are loath to do.

■ Based on the common law origins of the burglary statute, both in Wyoming and other jurisdictions, we hold the burglary statute was designed primarily to protect not only those places where people sleep, but also those places that a person could occupy. If the purpose of the burglary statute was to protect people within dwellings or places of business, then the area in which the crime can be committed must be large enough to admit a human being. It is clear that the display case, even though secured with a lock, was not large enough to accommodate a human being. We will not extend the burglary statute to include those situations in which a person enters a building open to the public and then enters a container that is too small to accommodate a human being. We hold the display case is not a "separately

secured or occupied portion" of a building, and we reverse Paugh's conviction.