[Nos. 15783-1-III; 16446-2-III.   Division Three.   April 9, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES C. MILLER, *Appellant.*

*In the Matter of the Personal Restraint of* JAMES C. MILLER, *Petitioner.*

*Neil P. Cox, Jr.*, of *Henderson & Grow*, for appellant.
*James C. Miller*, pro se.
*Ray D. Lutes, Prosecuting Attorney*, and *Benjamin C. Nichols, Deputy*, for respondent.

BURCHARD, J.* — Washington law provides that a person commits the crime of burglary when he enters or remains unlawfully in a building with intent to commit a crime therein. James C. Miller entered an open self-service car wash, broke into several coin boxes and took the money from them. He was properly found guilty of theft. However, he did not commit the crime of burglary and his convictions for that crime and the related crime of making or having burglar tools must be reversed and dismissed. Because the car wash was open to the public, Mr. Miller's entry and remaining were not unlawful.

---

*Judge Jack Burchard is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Jim's Car Wash in Clarkston, Washington, was open for business 24 hours a day including the time of this incident. The car wash consisted of wash bays or stalls completely open at each end (without doors), a roof, side walls and concrete floor. Attached to a side wall in each bay was the washing apparatus and a coin box secured with a padlock.

During the early morning hours of October 18, 1994, Mr. Miller in the company of Timothy Burke drove his truck to Jim's Car Wash. After washing the truck, Mr. Miller used bolt cutters and other tools to remove the locks from coin boxes in three separate wash bays. He opened the coin boxes and took the contents. Police responding to an alarm interrupted Mr. Miller and caught him at the car wash with the bolt cutters, coins and pieces of the padlocks.

Mr. Miller was charged with second-degree burglary, RCW 9A.52.030(1), making or having burglar tools, RCW 9A.52.060(1), and third-degree theft, RCW 9A.56.050(1). Prior to trial and at the close of the State's evidence during trial, Mr. Miller moved to dismiss the burglary charge as a matter of law.[1] The court denied those motions. The defense did not put on any evidence. The jury convicted Mr. Miller on all three counts.

Mr. Miller contends that his conduct does not constitute burglary. The State contends that Mr. Miller is guilty under the "remains unlawfully" alternative because his intent to commit a crime negated any license, invitation or privilege to remain or that Mr. Miller is guilty because he exceeded the scope of any license, invitation or privilege and commit-

---

[1]Prior to trial, he filed and argued a motion to dismiss which substantially came under the authority of *State v. Knapstad*, 41 Wn. App. 781, 706 P.2d 238 (1985). At the close of the State's case, defendant moved for dismissal. Such a motion should be granted if viewing the evidence and inferences in the light most favorable to the State, no rational trier of fact could find guilt beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 219, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

ted burglary when he entered the coin boxes by cutting off the locks, reaching in and removing the contents.

Mr. Miller did not enter or remain unlawfully in the car wash.

RCW 9A.52.030 defines burglary in the second degree as follows:

(1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling.

(2) Burglary in the second degree is a class B felony.

RCW 9A.52.010(3) defines the circumstances under which a person enters or remains unlawfully:

A person "enters or remains unlawfully" in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain.

A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of a building which is not open to the public.

Relying on *State v. Collins*, 110 Wn.2d 253, 751 P.2d 837 (1988), and *State v. Thomson,* 71 Wn. App. 634, 861 P.2d 492 (1993), the State argues that Mr. Miller's entry into adjacent stalls with intent to commit a crime was an unlawful entry because it violated the implied limitation of purpose of any license, invitation or privilege granted by the owner. Alternately, relying on *State v. Deitchler,* 75 Wn. App. 134, 876 P.2d 970 (1994), the State argues that Mr. Miller remained unlawfully in the whole car wash when he formed the intent to commit a crime in violation of the implied limitation of purpose of any license, invitation or privilege granted by the owner.

The State's logic is that no owner would grant entry for the purpose of committing a crime. Any license, invitation

or privilege is granted only for a legitimate purpose (like washing a vehicle for the required fee). Therefore, any entry or remaining for an illegitimate or criminal purpose violates the license, invitation or privilege and is unlawful. The State's argument is not supported by the statute or by case law and would lead to results far outside the legislative intent. For example, under this theory every shoplifting inside a building would be elevated from a misdemeanor to the class B felony of second-degree burglary. Most other indoor crimes might also be elevated to burglary.[2]

■ In the present case, it is immaterial whether Mr. Miller formulated the intent to steal the contents of the coin boxes before he entered the car wash or after he was already present. Washington law does not provide that entry or remaining in a business open to the public is rendered unlawful by the defendant's intent to commit a crime. The authorities cited by the State do not support its position. Burglary requires proof of an unlawful entry or remaining and intent to commit a crime. At least in the context of an open car wash, proof of intent to commit a crime does not establish the other element—unlawful entry.

■ Washington courts have never held that violation of an implied limitation as to purpose is sufficient to establish unlawful entry or remaining. In *State v. McDaniels*, 39 Wn. App. 236, 692 P.2d 894 (1984), the defendant was convicted of burglary for entering an open church with the intent to steal a coat. While Mr. McDaniels' purpose was a factor considered by the court, he could not have been convicted but for the fact that the public invitation to enter was

---

[2]Such a result occurs under the California rule which was rejected in *Collins* discussed *infra. See People v. Barry*, 94 Cal. 481, 29 P. 1026 (1892). Illinois courts interpreting a different statutory definition of burglary have chosen to go that direction. In Illinois, various crimes are defined as burglaries which are clearly outside the definition provided by the Washington Legislature. They include *People v. Blair,* 52 Ill. 2d 371, 288 N.E.2d 443 (1972) (coins taken from coin box of self-service car wash); *People v. Weaver,* 41 Ill. 2d 434, 243 N.E.2d 245 (1968) (taking coins from a vending machine in a laundromat); *People v. Smith,* 264 Ill. App. 3d 82, 637 N.E.2d 1128 (1994) (shoplifting of a coat from an open store); *People v. Drake,* 172 Ill. App. 3d 1026, 527 N.E.2d 519 (1988) (forging a check in a grocery store); *People v. Stager,* 168 Ill. App. 3d 457, 522 N.E.2d 812 (1988) (shoplifting of food from a grocery store).

revoked when he was earlier confronted by church members who forced him to leave. They told Mr. McDaniels they did not believe his explanation that he was waiting for a friend. The obvious understanding of the *McDaniels* court was that his first entry into the open church, before being confronted, was not unlawful regardless of his purpose.

This principle was further clarified by the Supreme Court in *Collins*. Mr. Collins was invited into the private residence of Charlotte and Ellah Dungey because he was lost and needed to use the telephone located in the front room. After making the call, he dragged the two women into a bedroom and assaulted them. The court held Mr. Collins had remained unlawfully because he exceeded implied limitations on the scope of his invitation. The court rejected the California rule that the defendant's criminal intent upon entry may render that entry unlawful under the burglary statute:

> We decline, however, to adopt the California rule preferring instead a case by case approach. While the formation of criminal intent per se will not always render the presence of the accused unlawful, that presence may be unlawful because of an implied limitation on, or revocation of, his privilege to be on the premises.

*Collins*, 110 Wn.2d at 258.

The court found that implied limitations were placed upon Mr. Collins' entry. He was invited into the living room only for the purpose of using the telephone and for as long as it took to use the telephone. "No reasonable person could construe this as a general invitation to all areas of the house for any purpose." *Id.* at 261.

In addition, a privilege or invitation can be revoked:

> A second theory, likewise to be applied on a case by case basis, supports the same result. Once Collins grabbed the two women and they resisted being dragged into the bedroom, any privilege Collins had up to that time was revoked.

*Id.* at 261.

Nothing in *Collins* supports the argument that the harboring of criminal intent is in itself sufficient to violate an implied limitation or to establish revocation of any license, invitation or privilege.

> We hold that, in some cases, depending on the actual facts of the case, a limitation on or revocation of the privilege to be on the premises may be inferred from the circumstances of the case. That neither renders part of the statute superfluous nor converts all indoor crimes into burglaries. Not all such cases will support the inference we find justified here.

*Id.* at 261-62.

This principle is explained clearly by Judge Morgan in *Thomson*. A woman invited Mr. Thomson to her home and allowed him to stay overnight. She directed him to sleep in the guest room. She refused his sexual advance, went to her bedroom and locked the door. Mr. Thomson broke through her bedroom door and forced her to have sexual intercourse. He was convicted of first-degree rape, which required proof that Mr. Thomson feloniously entered the building where the victim was situated. The central holding of *Thomson* required reduction of the charge to rape in the second degree because the defendant had feloniously remained in the building, but he had not feloniously entered it. The Supreme Court did not find that violation of an implied limitation of purpose could be sufficient grounds for concluding that a defendant unlawfully entered or remained. In *Collins*, the defendant's criminal purpose was merely a circumstance that helped establish that he had violated implied limitations as to place and time.

> In finding that the record supported implied limitations as to place and time, the Supreme Court considered the purpose of the invitation as an important factor from which to infer the existence of implied limitations considering place and time. It is not clear whether the court also held that conduct within an invitation's limits as to place and time constitutes unlawful or felonious remaining, merely because it exceeds the purpose for which the victims extended the invitation.

*Thomson*, 71 Wn. App. at 640.

*McDaniels, Collins,* and *Thomson* are a long way from the present case. In *McDaniels,* the revocation of a public invitation was specifically communicated by a church member who forced him to leave. In *Collins,* the defendant was invited into the living room only to use the telephone. The home was not open to the public like a car wash. In *Thomson,* the defendant was told he could not enter the owner's bedroom before he broke through the locked door.

The State relies on *State v. Deitchler,* 75 Wn. App. 134, 876 P.2d 970 (1994). Its reliance is misplaced. Mr. Deitchler was performing community service work as a janitor in the Port Orchard police department. The evidence locker was part of a plywood cabinet measuring 10 inches by 10 inches by 2 feet. A slot measuring 6 inches by 1 inch allowed evidence to be deposited. The evidence could not be removed unless the cabinet was unlocked. Mr. Deitchler inserted part of his hand and a metal rod through the slot in an attempt to remove the contents. He damaged some of the evidence bags. The Court of Appeals dismissed the burglary conviction because the evidence locker was not a building or a separate unit within a building. *Id.* at 137. In reference to *Collins* and *Thomson,* Judge Morgan added the following comment: "In reaching this result we do not consider whether a burglary charge might have been sustained if the State had charged Deitchler with remaining unlawfully in the larger police station." *Deitchler,* at 137. That comment does not support the State's position. It merely indicates that the issue was not considered or decided by the court.

DOES THE BREAKING OF A SMALL COIN BOX FOR THE PURPOSE OF STEALING THE CONTENTS CONSTITUTE BURGLARY?

■ ■ This question was persuasively settled in *Deitchler.* RCW 9A.04.110(5) defines a building as follows:

"Building," in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods;

each unit of a building consisting of two or more units separately secured or occupied is a separate building.

Judge Morgan concluded that a structure or space within a large building is not a separate building unless the large building has "two or more units separately secured or occupied" and the structure or space being considered is one of those "units." *Deitchler,* 75 Wn. App. at 137. Here the separate stalls and coin boxes were not "separate buildings" any more than the police evidence locker in *Deitchler* was a "separate building." *Deitchler* corresponds almost exactly with the present case:

> Here, the evidence locker was a smaller space or structure located within the larger police station. As far as the record shows, the police station was occupied by a single tenant, and thus was not a building consisting of two or more units separately secured or occupied. *State v. Thomson,* 71 Wn. App. 634, 861 P.2d 492 (1993). As a result, the evidence locker was neither a "unit" of the police station nor a "separate building" inside the police station, and a charge of burglarizing the evidence locker cannot be sustained.

*Deitchler,* 75 Wn. App. at 137. Similarly, Jim's Car Wash was occupied by a single tenant and was not a building consisting of two or more units separately secured or occupied. As a result the separate stalls and coin boxes were not "units" of the car wash nor "separate buildings" inside the car wash, and the charge of burglarizing the separate stalls or the coin boxes cannot be sustained.

██ Cases from other jurisdictions decided under a variety of statutes are not always consistent. However, burglary is ordinarily considered only in the context of a structure large enough to accommodate a human being. *Id.* at 138 n.5; Jeffrey F. Ghent, Annotation, *What is "Building" or "House" Within Burglary or Breaking and Entering Statute,* 68 A.L.R.4TH 425 (1989). A structure too small for a human being to live in or do business in is not a "building" or "structure" for the purpose of burglary. *Deitchler,* 75 Wn. App. at 139 n.6. The coin boxes at Jim's Car

Wash fit that description. They were too small to constitute "buildings" under the burglary statutes.

◼ Application of the burglary statute to defendant's conduct was clearly outside the purpose of the Legislature. However, an additional ground also requires reversal. Even if we were unable to ascertain legislative intent, the rule of lenity would lead us to the same construction of the statute. "The rule of lenity provides that ambiguity in a criminal statute should be resolved in favor of the defendant." *Thomson*, 71 Wn. App. at 645 (citing *State ex rel. McDonald v. Whatcom County Dist. Court*, 92 Wn.2d 35, 37-38, 593 P.2d 546 (1979)).

◼ We conclude Mr. Miller was guilty of theft and sustain that conviction. However, he did not commit the crime of burglary and that charge must be reversed and dismissed. The related conviction for making or having burglar tools must also be reversed and dismissed. Under RCW 9A.52.060 (*see* WASHINGTON PATTERN JURY INSTRUCTION 60.11), one of the elements of the crime of making or having burglar tools is that they are possessed under circumstances evincing an intent to use them in a burglary. The circumstances involved in the present case could not constitute burglary. Therefore, the defendant's possession of the tools for criminal purposes was insufficient to establish the crime of making or having burglar tools.

The related personal restraint petition is denied as explained in *State v. Miller*, 90 Wn. App. 1018 (1998).

KURTZ, A.C.J., and SWEENEY, J., concur.