IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33279-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BENJAMIN SANTOS CASTRO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Law enforcement officers arrested Benjamin Castro while he occupied a stolen car. Officers found methamphetamine and sundry burglary tools inside the car. A jury convicted Castro of possessing a stolen vehicle, making or having burglary tools, two counts of second degree possession of stolen property, and possession of a controlled substance. On appeal, Castro contends the jury heard insufficient evidence to convict him of possessing burglary tools, the prosecutor committed misconduct in her closing statement, and the trial court gave an erroneous jury instruction on reasonable doubt. We agree that Castro's conviction for possessing burglary tools must be dismissed for lack of evidence. We reject his other contentions and affirm the remaining convictions.

## FACTS

Benjamin Castro and Kayla Clark met during a methamphetamine and alcohol party, on the evening of December 12, 2013. Both Clark and Castro imbibed methamphetamine at the gathering. That same night the two decided to travel from Tacoma to Montana to visit Clark's family.

At the end of the December 12 party, Benjamin Castro and Kayla Clark, with passenger Tiny Mack, journeyed in a stolen Mitsubishi Outlander, from Tacoma. According to Clark, she knew, but did not inform Castro, that the Outlander was stolen. Upon commencement of the lengthy trek, Clark placed two bags of methamphetamine on the front passenger seat.

Benjamin Castro and Kayla Clark left Tiny Mack in North Bend. The two, with Castro driving, traveled across Snoqualmie Pass and on to Cle Elum during the early morning of December 13. Castro and Clark stopped for the night in Cle Elum because the duo found no gas station in the Cascades foothills town open in the early morning hours. Castro pulled the Outlander into a Best Western Hotel parking lot.

Around 3:15 a.m., Cle Elum Police Officer Nicholas Burson responded to a request from the Cle Elum Best Western Hotel to direct the driver of a car parked in its parking lot to move the car. Officer Burson pulled his patrol car behind the white Outlander and typed the car's license plate into his computer. The computer replied with

2

a notice that the car was stolen. Officer Burson pulled his patrol car away from the Outlander and waited for assistance.

Kittitas County Sheriff Deputy Mike McKean, Washington State Troopers Paul Bloom and Don Farrell, and Ellensburg Police Officer Drew Haulk arrived at the Cle Elum Best Western. Deputy McKean blocked the egress of the stolen white Outlander with his patrol car, activated the patrol car's emergency lights, and ordered the occupants of the Outlander to exit the vehicle. Benjamin Castro placed the Outlander's keys on the roof of the car and exited the car through the driver's door. Officers restrained Castro and placed him in the back seat of a patrol car. Kayla Clark also exited the car from the passenger's side, and officers handcuffed her.

Officer Nicholas Burson approached the Mitsubishi Outlander to determine if other persons occupied the car. The car doors remained open. Burson espied, on the front passenger's seat, two small bags of a white crystal substance that he identified as methamphetamine.

Officers placed Benjamin Castro and Kayla Clark under arrest. When arresting Castro, Officer Burson asked Castro if he possessed any sharp objects in his pockets before frisking him. Castro stated he possessed a needle. Burson removed a capped used hypodermic needle in a Sharps container from Castro's front right pants pocket. Burson also found, in Benjamin Castro's pants pocket, a spring-loaded window punch. The

3

punch, when placed against a car window and released, shatters the window. Burson also removed, from Castro's pockets, credit cards and a debit card belonging to Jessie Prince.

Law enforcement contacted a tow truck company, and a tow truck removed the Mitsubishi Outlander from the hotel parking lot to the Cle Elum Police Department evidence lot. Officer Nicholas Burson sought and obtained a warrant to search the Outlander. Burson confiscated, from inside the car, a Taser stun gun, bolt cutters, a wallet belonging to Jessie Price, a purple bag with its padlock cut, two laptop computers, a Taurus Airsoft handgun with the orange tip removed, and a North Face backpack. Burson opened the backpack and discovered therein Benjamin Castro's credit cards, bolt cutters, pliers, handcuffs, various keys, a shim, colored stones, all-terrain vehicles (ATV) keys, receipts showing use of Jessie Prince's credit cards, binoculars, screwdriver, a leatherman tool, gloves, magnet, wrench, wire snips, a fixed-blade knife, wrenches, a pocketknife, and two bags of methamphetamine.

## PROCEDURE

The State of Washington charged Benjamin Castro with possession of a stolen vehicle, possession of stolen property in the second degree, possession of methamphetamine, and possession of burglary tools. On the first day of trial, the State amended its information to add a second count of possession of stolen property in the second degree.

4

During trial, Officer Nicholas Burson listed all of the objects he found inside the Outlander, including the objects found in the North Face backpack. During direct examination, Officer Burson testified:

Q. Do you have any training in able [sic] to recognize the types of tools that are used in burglaries?
A. Yes.
Q. Okay. Where did you get that training?
A. In the Academy.
Q. Okay. And are they consistent with the tools that are in this?
A. Yes, they are. These would often be used to cut a padlock or some sort of wire of a larger gauge. This is for popping doors or getting in windows or anything like that.
Q. And gloves?
A. And these we use. Gloves, yeah, to conceal fingerprints.

Report of Proceedings (RP) (Mar. 10, 2015) at 88.

During trial testimony, Officer Nicholas Burson testified that one uses a window punch, such as found in Benjamin Castro's pocket, by placing the punch "to a window and pull[ing] and releas[ing] and it shatters the window." RP (Mar. 10, 2015) at 60. Officer Burson added that the punch breaks any window including house windows. Burson also declared that the confiscated bolt cutters "cut locks or a chainlink fence or anything metal." RP (Mar. 10, 2015) at 68. Officer Burson averred that "the edges [of found keys] . . . worn off them so they can be slipped inside more ignitions than they're supposed to, and you can kind of jiggle them and sometimes get cars to start with using a shaved key." RP (Mar. 10, 2015) at 85.

5

On the second day of trial, the court and counsel discussed jury instructions.

During the conference, Benjamin Castro did not object to the use of 11 *Washington*

*Practice*: *Washington Pattern Jury Instruction*: *Criminal* 4.01, at 85 (3d ed. 2008)

(WPIC) as a jury instruction for the definition of reasonable doubt. The trial court

instructed the jury on reasonable doubt:

> A reasonable doubt is one for which a reason exists and may arise
> from the evidence or lack of evidence. It is such a doubt as would exist in
> the mind of a reasonable person after fully, fairly and carefully considering
> all of the evidence or lack of evidence. If, after such consideration, you
> have an abiding belief in the truth of the charge, you're satisfied beyond a
> reasonable doubt.

RP (Mar. 11, 2015) at 93-94. Castro proposed an instruction with the identical language.

During rebuttal in closing arguments, the State's attorney argued:

> Evidence Instruction No. 3 says: A reasonable doubt is one for
> which a reason exists. Do you think you have a reason to doubt in this
> case? He's got this car and he's got all this stolen property on him. Do you
> have any reason to doubt that he knew that it was stolen? Absolutely not.

RP (Mar. 11, 2015) at 142-43.

The jury found Benjamin Castro guilty on all five charges. The trial court

sentenced Castro to fifty months in prison.

## LAW AND ANALYSIS

Benjamin Castro asserts four errors on appeal. First, insufficient evidence

supports his conviction for making or having burglary tools. Second, the prosecutor

6

committed misconduct during rebuttal argument. Third, the reasonable doubt instruction is unconstitutional. Fourth, his counsel was ineffective for proposing an erroneous jury instruction. The first argument attacks only the conviction for making or possessing burglary tools. The remaining arguments challenge all convictions. We agree with Benjamin Castro's first assignment of error and reverse his conviction for possession of burglary tools. We reject his other arguments and affirm the remaining four convictions.

## Burglary Tools

Benjamin Castro contends that the State did not present sufficient evidence to support his conviction for making or having burglary tools because it only presented evidence that the tools were used for vehicle prowls. Evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986).

The controlling statute, RCW 9A.52.060(1), declares:

> Every person who shall make or mend or cause to be made or mended, or have in his or her possession, any engine, machine, tool, false key, pick lock, bit, nippers, or implement adapted, designed, or commonly used for the commission of burglary *under circumstances evincing an intent to use or employ*, or allow the same to be used or employed in the commission of a *burglary*, or knowing that the same is intended to be so used, shall be guilty of making or having burglar tools.

7

(Emphasis added.) A former statute contained a provision that imposed a presumption that possession of burglary tools "was had with the intent to use or employ . . . in the commission of a crime." Former RCW 9.19.050 (1909), *repealed by* LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.92.010. Gone is this presumption.

Under RCW 9A.52.060, one of the elements of the crime of having burglary tools is the accused's possession of tools under circumstances evincing an intent to use them in a "burglary." *State v. Miller*, 90 Wn. App. 720, 730, 954 P.2d 925 (1998). An accused is guilty under Washington statutes for "burglary" if he "enters or remains unlawfully" in a "building" or "dwelling other than a vehicle." RCW 9A.52.020, .025, and .030. Benjamin Castro contends that the State presented insufficient evidence to show he intended to commit a burglary, since the State presented no evidence of his seeking to unlawfully enter a building or dwelling. We agree.

A controlling decision is *State v. Miller*, 90 Wn. App. 720 (1998). James Miller entered an open self-service wash, used bolt cutters and other tools to remove the locks from coin boxes, and took money. The State charged Miller with burglary, having burglary tools, and theft. A jury convicted him on all three charges. On appeal, this court reversed Miller's burglary and possession of burglary tools convictions. The court found no circumstances that constituted burglary.

8

In this appeal, the State, at trial, presented strong evidence that Castro possessed tools that could be used to enter a dwelling. The State also offered evidence of vehicle prowls and car thefts. Nevertheless, the State offered no evidence that Benjamin Castro committed or attempted to commit any burglaries.

### Prosecutorial Misconduct

Benjamin Castro next argues that the prosecutor committed misconduct in her closing argument by requiring the jury to articulate a reason to doubt his guilt. The State responds that the prosecutor simply addressed the defense's contention that Castro may not have known the property was stolen. We agree with the State.

This court reviews a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005). A defendant claiming prosecutorial misconduct must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Nevertheless, a prosecutor's statements are improper if they misstate the applicable law, shift the burden to the defense, mischaracterize the role of the jury, or invite the jury to determine guilt on improper grounds. *State v. Emery*, 174 Wn.2d at 759-60; *State v. Boehning*, 127 Wn. App. at 522. Even if the defendant shows the comments were

9

improper, the error does not require reversal unless the appellate court determines there is a substantial likelihood the misconduct affected the jury's verdict. *State v. Gentry*, 125 Wn.2d 570, 640, 888 P.2d 1105 (1995).

If a defendant did not object to a prosecutor's alleged misconduct at trial, he or she is deemed to have waived any error, unless the misconduct was so flagrant and ill-intentioned that a jury instruction could not have cured the resulting prejudice. *State v. Gentry*, 125 Wn.2d at 596. Reviewing courts should then focus less on whether the prosecutor's misconduct was flagrant or ill-intentioned and more on whether the resulting prejudice could have been cured. *State v. Emery*, 174 Wn.2d at 762. Under this heightened standard, the defendant must show that (1) no curative instruction would have obviated any prejudicial effect on the jury, and (2) the misconduct resulted in prejudice that "had a substantial likelihood of affecting the jury verdict." *State v. Emery*, 174 Wn.2d at 760. Benjamin Castro did not object during closing argument. He now bears the burden on appeal to demonstrate that the State's comments were so prejudicial that no curative instruction could have remedied their effect and that the comments had a substantial likelihood of affecting the jury's verdict.

We recognize that in many instances the term "prosecutorial misconduct" is a misnomer since the defense does not contend that the State's attorney consciously and flagrantly violated a code of conduct. In instances of negligence, use of the phrase

10

"prosecutorial error" fits better. Nevertheless, because Castro did not object to the prosecutor's closing remarks, he must show flagrant and ill-intentioned behavior. We hold that Castro does not even establish negligent behavior or prosecutorial error.

Benjamin Castro likens the prosecutor's argument to fill-in-the-blank statements like those in *State v. Emery*, 174 Wn.2d 741 (2012). In *Emery*, during closing, the prosecutor commented:

> [I]n order for you to find the defendant not guilty, you have to ask yourselves or you'd have to say, quote, I doubt the defendant is guilty, and my reason is blank. A doubt for which a reason exists. If you think that you have a doubt, you must fill in that blank.

174 Wn.2d at 750-51. The Washington Supreme Court held the State's reference to "fill in the blank" was improper. *State v. Emery*, 174 Wn.2d at 759. The court reasoned that the "argument subtly shifts the burden to the defense" because it requires the jury to articulate a reason to doubt. *State v. Emery*, 174 Wn.2d at 760.

Benjamin Castro's argument fails because, unlike in *State v. Emery*, the prosecutor did not ask the jury to articulate a reason for doubt. The State's attorney merely declared that the jury lacked any reason to doubt. The State agreed in its closing that it bore the burden of proof. The prosecutor repeatedly read verbatim a jury instruction imposing the burden of proving all elements on the State. Castro's argument, if accepted, could require the State not to address any of the purported weaknesses asserted by the defense.

11

Reasonable Doubt Instruction

Benjamin Castro contends that the reasonable doubt instruction unconstitutionally shifted the burden of proof from the State to him by requiring the jury to articulate a reason to doubt. The State responds that the instruction is proper and that the invited error doctrine applies and precludes review of this assignment of error. We agree that the invited error rule applies.

The invited error doctrine precludes a criminal defendant from seeking appellate review of an error he or she helped create, even when the alleged error involves constitutional rights. *State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999); *State v. Henderson*, 114 Wn.2d 867, 870-71, 792 P.2d 514 (1990). The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996); *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995). The rule is a strict one. *State v. Studd*, 137 Wn.2d at 547. In the criminal context, the doctrine of invited error is most commonly invoked when a defendant seeks to challenge a jury instruction that he or she proposed at trial. *State v. Studd*, 137 Wn.2d at 546; *State v. Henderson*, 114 Wn.2d at 870 (1990); *State v. Boyer*, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979).

Benjamin Castro requested the jury instruction he now challenges. Therefore, we

12

do not address the merits of his contention.

Ineffective Assistance of Counsel

In his supplemental briefing, Benjamin Castro alleges that his counsel was ineffective for proposing the reasonable doubt jury instruction that allows the State to argue the invited error doctrine applies. We disagree that counsel was ineffective since the trial court was bound to give the proposed instruction.

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). If one prong of the test fails, we need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

We address only the deficiency of performance prong. Under the deficiency prong, this court gives great deference to trial counsel's performance and begins the analysis with a strong presumption that counsel was effective. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Johnston*, 143 Wn. App. 1, 16, 177 P.3d 1127 (2007). Deficient performance is performance that fell below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127

13

Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The defendant bears the burden to prove

ineffective assistance of counsel. *State v. McFarland*, 127 Wn.2d at 335.

Invited error does not bar review of a claim of ineffective assistance based on an

erroneous jury instruction. *State v. Bennett*, 87 Wn. App. 73, 76, 940 P.2d 299 (1997),

*aff'd sub nom. State v. Studd*, 137 Wn.2d 533, 973 P.2d 1049 (1999). Therefore, we ask

whether the trial court's jury instruction on reasonable doubt constituted error.

In general, reviewing courts leave the specific language of jury instructions to the

discretion of the trial court. *State v. Smith*, 174 Wn. App. 359, 366, 298 P.3d 785 (2013).

One exception to this rule of deference is the reasonable doubt instruction. *State v.*

*Bennett*, 161 Wn.2d 303, 165 P.3d 1241 (2007). The state Supreme Court has mandated

use of WPIC 4.01. In *State v. Bennett*, the high court declared:

> Even if many variations of the definition of reasonable doubt meet
> minimal due process requirements, the presumption of innocence is simply
> too fundamental, too central to the core of the foundation of our justice
> system not to require adherence to a clear, simple, accepted, and uniform
> instruction. We therefore exercise our inherent supervisory power to
> instruct Washington trial courts not to use the *Castle* instruction. We have
> approved WPIC 4.01 and conclude that sound judicial practice requires that
> this instruction be given until a better instruction is approved. Trial courts
> are instructed to use the WPIC 4.01 instruction to inform the jury of the
> government's burden to prove every element of the charged crime beyond a
> reasonable doubt.

161 Wn.2d at 317-18.

Trial defense counsel proposed and the trial court gave the jury the standard WPIC

14

4.01. The trial court did not commit error by delivering the approved instruction. Instead the trial court would have erred by giving another instruction. Because there was no error, trial counsel did not perform deficiently by failing to propose another instruction.

## CONCLUSION

We reverse Benjamin Castro's conviction for making or having burglary tools. We affirm his convictions for possession of a stolen vehicle, two counts of possession of stolen property in the second degree, and possession of methamphetamine. We remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____          _____
Siddoway, J.                                                   Lawrence-Berrey, J.

15