# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 50163-5-II |
| Respondent | |
| v. | |
| ANTOINE DE'MAURY SHAW | UNPUBLISHED OPINION |
| Appellant | |

LEE, J. — Antoine De'Maury Shaw appeals his convictions for second degree burglary and second degree theft as an accomplice with an aggravating circumstance of egregious lack of remorse. Shaw argues that insufficient evidence was presented to prove that he (1) "unlawfully entered or remained in a building" for second degree burglary, (2) was more than merely present for second degree theft as an accomplice, and (3) had demonstrated an egregious lack of remorse for the aggravating circumstance. We hold that Shaw's claims fail and affirm.

## FACTS

### A. THE PORT ORCHARD INCIDENT

In March 2016, Shaw and Gary Harrison visited a phone store in Port Orchard, Washington. The store had a counter with computers and a cash register. There were accessories hanging on the wall to the left and right of the counter, but there was no merchandise behind the counter for purchase. The area behind the counter was a workspace for employees and only

employees were allowed behind the counter. However, there was no sign that stated the area behind the counter was for employees only, and there was no gate to keep customers from going behind the counter. Customers sometimes wandered behind the counter when not paying attention, but the store policy was to not allow customers to go behind the counter.

At the Port Orchard store, an employee helped Harrison purchase a phone plan. While the employee was helping Harrison, Shaw asked the employee about purchasing a phone. The employee went into the back of the store and brought out the phone Shaw asked about. The employee then placed the phone under the counter and continued to help Harrison. Shaw then asked the employee if the store had a different type of phone. The employee again went into the back of the store to see if they had the phone Shaw asked about. When she returned, Shaw and the phone that she had placed under the counter were gone.

Harrison was still in the store. The employee asked Harrison to get Shaw because she had some questions for him. When Shaw returned to the store, the employee asked him if he still wanted the phone. Shaw admitted that he did not have the money for it and said that he "felt like [the employee] was accusing him of stealing something." Verbatim Report of Proceedings (VRP) (Dec. 1, 2016) at 118. The employee then gave Harrison his phone, and Harrison and Shaw left the store.

After Shaw and Harrison left, the employee checked the store surveillance footage. The footage showed Shaw going behind the counter and taking the phone from under the counter.

The store manager then called Harrison and asked him to return the phone. Shaw later called the store manager, admitted to taking the phone, and said that he wanted to return it. The

store manager gave Shaw until the close of business to return the phone. Shaw never returned the phone.

B.     THE SILVERDALE INCIDENT

About an hour after visiting the Port Orchard store, Shaw and Harrison visited another phone store in Silverdale, Washington. Shaw had some money in his hand and asked an employee about purchasing a phone, while Harrison went to look at the demo phones. Officers believed that the money in Shaw's hand was a prop to show how serious he was about purchasing a phone.

The employee went into the back of the store to get an answer to one of Shaw's questions from another employee. When the employee returned, she heard the alarm go off, and saw Harrison put the demo phones in his pocket and run out of the store. Shaw started to follow Harrison. The employee tried to close the door and lock Shaw in, but Shaw shoved the employee out of the way and left the store.

C.     THE POLICE INTERVIEW AND CHARGES

A few days later, the police interviewed Shaw about the incidents. Shaw denied having been in Kitsap County, having any knowledge of the thefts, and knowing Harrison. Shaw was later arrested and charged by amended information with second degree burglary, third degree theft, second degree theft as an accomplice, and second degree assault. The State also alleged that in committing burglary, second degree theft, and assault, Shaw demonstrated an egregious lack of remorse.

D.     JAIL PHONE CALLS

While in jail, Shaw made several phone calls. In one call, Shaw stated:

[N]one of this sh\*\* would have happened if I would have just been by myself ya know what I'm saying, doing my own thing because every time I get mixed up with some m\*\*\*\*\* f\*\*\*\*\*\* they don't know how to do it right and they are always doing some off the wall sh\*\*.

. . . .

I put myself in this situation by being with some unskilled m\*\*\*\*\* f\*\*\*\*\*\*, and that's what happened you feel me, n\*gg\*\*s got jealous and got all envy and greedy and sh\*\* and then seen how I was doing it and then it, it just went kinda, went salty kinda bad, ya feel me, but [it's] not what it is though, [it's] just that that's how they do it over here so I gotta go to court and take a deal for it or whatever I'm not trippin you know what I'm saying. I don't. . . he didn't even get booked on this sh\*\* just I did, but I'm not trippin [it's] nothing ya know I just know now though when I get out though I can't f\*\*\* with n\*gg\*\*s like that ya feel me, I be trying to f\*\*\* with em though put them on money but [every time] I put somebody on money they don't, they don't know how to do it right, they don't know how to maneuver right they're . . . and they get mad at me the way I maneuver cuz I get it done right and then they don't do it right.

Clerk's Papers (CP) at 126. In another call, Shaw stated:

[M]an I got caught up in some little sh\*\* so I gotta do this time man but man you know . . . just gotta do this little time and sh\*\* like that, f\*\*\*in with the wrong m\*\*\*\*\*f\*\*\*\*\*\*, not focused and on some other sh\*\* man just slacking a little bit so I got caught up on some bullsh\*\*, but you [know], so it's all whatever.

CP at 128-29.

E.      TRIAL

During trial, the State presented evidence as outlined above. The State also presented evidence that "[p]utting someone on money" means showing them how to get money. VRP (Dec. 6, 2016) at 252.

After the State rested its case in chief, Shaw brought a motion to dismiss the egregious lack of remorse aggravating circumstance, the second degree burglary charge, and the second degree assault charge. The trial court granted Shaw's motion in part by dismissing the second degree assault charge.

F.        VERDICT AND APPEAL

The jury convicted Shaw of second degree burglary, third degree theft, and second degree theft as an accomplice.  The jury also found, by special verdict, the aggravating circumstance that Shaw committed the second degree theft as an accomplice while demonstrating or displaying an egregious lack of remorse.  Shaw's standard sentencing range for the second degree theft as an accomplice conviction was 14 to 18 months.  Based on the aggravating circumstance found by the jury, the trial court sentenced Shaw to 45 months in custody.

Shaw appeals.

ANALYSIS

A.        LEGAL PRINCIPLES

We review the sufficiency of evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).  The State must prove every element of a crime beyond a reasonable doubt. *Id.* To determine if sufficient evidence supports a conviction, we consider if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

In a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the State and all reasonable inferences are drawn in favor of the State. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265-66, 401 P.3d 19 (2017).  Also, in challenging the sufficiency of the evidence, the defendant admits the truth of all the State's evidence. *Id.* at 265. Circumstantial and direct evidence are equally reliable. *Id.* at 266.  We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

B.       SECOND DEGREE BURGLARY

Shaw argues that there was insufficient evidence to show he unlawfully entered or remained in a building for second degree burglary. We disagree.

Under RCW 9A.52.030(1), a person is guilty of second degree burglary if (1) with intent to commit a crime against a person or property therein, (2) he enters or remains unlawfully in a building. "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2). "A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of a building which is not open to the public." RCW 9A.52.010(2).

Unlawful presence and criminal intent must be present for a burglary to occur. *State v. Allen*, 127 Wn. App. 125, 137, 110 P.3d 849 (2005). "[A] limitation on or revocation of the privilege to be on the premises may be inferred from the circumstances of the case." *State v. Collins*, 110 Wn.2d 253, 261, 751 P.2d 837 (1988). When a person exceeds the scope of the invitation into a building, the person has remained unlawfully. *Id.* at 255. "It is the consent, or lack of consent, of the [building] possessor . . . that drives the burglary statute's definition of a person who 'is not then licensed, invited, or otherwise privileged to so enter or remain' in a building." *State v. Wilson*, 136 Wn. App. 596, 609, 150 P.3d 144 (2007).

When a person exceeds the scope of his invitation into a building, he has remained unlawfully. *Collins*, 110 Wn.2d at 255. A limitation on the privilege to be on the premises may

be inferred from the circumstances of the case. *Id.* at 261. Such an inference can be made that Shaw unlawfully remained in a part of the store that was not open to the public.

Here, a limitation on Shaw's privilege to be in the store can be inferred from the circumstances of this case, and Shaw exceeded the limitation. The burglary charge arose from the events at the Port Orchard store. In the Port Orchard store, Shaw went behind the counter, reached under the counter where the employee had placed the phone, and took the phone. The area behind the counter was an employee workspace with computers and a cash register. Although there were accessories hanging on the wall to the left and right of the counter, there was no merchandise behind the counter on display or for purchase. Store policy was to not allow people to go behind the counter; only employees were allowed behind the counter. Under these facts, a reasonable inference could be made that Shaw's privilege to be in the store did not extend to the area behind the counter where the employee had placed the phone. *Id.* at 261. But Shaw exceeded this limitation by reaching behind the counter and taking the phone the store employee had placed under the counter; thus, he remained unlawfully. *Id.* at 255. Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in favor of the State, a rational trier of fact could find beyond a reasonable doubt that Shaw remained unlawfully. *Cardenas-Flores*, 189 Wn.2d at 265-66; *Rich*, 184 Wn.2d at 903.

Shaw argues that a reasonable person would believe that the area behind the counter was impliedly open to the public. First, Shaw claims that there was merchandise on the wall that could only be accessed by walking in that area. However, this claim is factually meritless. There was

only merchandise on the left and right of the counter; there was no merchandise behind the counter on display or for purchase.

Second, Shaw claims that customers had to walk into the area behind the counter to get merchandise on the wall and that there were no signs or physical barriers to keep customers from going behind the counter. But the evidence presented only showed that customers had wandered behind the counter while not paying attention, not that they had done so on purpose. Furthermore, Shaw does not provide legal authority for his argument that the absence of signs or physical barriers precludes an inferred limitation on the area behind the counter. An inferred limitation is based on the circumstances of the case. *Collins*, 110 Wn.2d at 261. And here, the store policy was to not allow customers to go behind the counter. This area, which had computers and a cash register, was a workspace for employees; no merchandise was behind the counter. Because of the cash register and absence of merchandise, a reasonable person would not believe that such an area was open to the public.

Shaw also argues that entry into a business otherwise open to the public is not rendered unlawful by a defendant's intent to commit a crime therein, citing *State v. Miller*, 90 Wn. App. 720, 954 P.2d 925 (1998). In *Miller*, the defendant went to a self-service car wash and broke into several coin boxes in the service bays. 90 Wn. App. at 723. The defendant was convicted of second degree burglary. *Id*. On appeal, the court held that the defendant's intent to steal before entering the car wash was immaterial. *Id*. at 725. It stated that "Washington courts have never held that violation of an implied limitation as to purpose is sufficient to establish unlawful entry or remaining." *Id*. While Shaw may be correct that his intent to steal a phone inside the store does

not render his initial entry into the store unlawful, his physical entry into the area behind the counter exceeded the limitation on his privilege to be in the store.

Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in favor of the State, a rational trier of fact could find beyond a reasonable doubt that Shaw remained unlawfully. Therefore, we hold that sufficient evidence was presented to show that Shaw unlawfully remained in the area behind the counter.

## C. SECOND DEGREE THEFT AS AN ACCOMPLICE

Shaw argues that the evidence was insufficient to show that he aided Harrison in committing the theft for second degree theft as an accomplice. Again, we disagree.

Under RCW 9A.56.040(1), a person is guilty of second degree theft if he commits theft of property which exceeds $750 but does not exceed $5,000. "Theft" means to "wrongfully obtain or exert unauthorized control over the property or services of another . . . with intent to deprive him or her of such property." RCW 9A.56.020(1)(a).

Under RCW 9A.08.020(2)(c), a person is legally accountable for the conduct of another person when he is an accomplice of the other person in the commission of a crime. A person is an accomplice when he "[s]olicits, commands, encourages, or requests such other person to commit" the crime or "[a]ids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a)(i), (ii). However, mere presence and knowledge of the criminal activity is insufficient to establish accomplice liability. *State v. Truong*, 168 Wn. App. 529, 540, 277 P.3d 74, *review denied*, 175 Wn.2d 1020 (2012). A person is not guilty as an accomplice unless he "associates himself with the venture and takes some action to help make it successful." *Id.* at 539.

Here, the evidence showed that Shaw aided Harrison in committing the theft for second degree theft from the Silverdale store. Shaw and Harrison went to the Port Orchard store together, where Shaw stole a phone. An hour later, Shaw and Harrison went to the Silverdale store together, where Shaw occupied the employee's attention while Harrison stole two phones. Also, in trying to leave the store after Harrison stole the phones, Shaw pushed aside the store employee who was trying to block his exit. Shaw then stated in a jail phone call that "none of this sh** would have happened if [he] would have just been by [himself]." CP at 126. Shaw admitted that he put himself "in this situation by being with some unskilled [people]." CP at 126. He also admitted that he tried to "put them on money but [every time he] put somebody on money they don't, they don't know how to do it right, they don't know how to maneuver right." CP at 126. "Putting someone on money" means showing them how to get money. VRP (Dec. 6, 2016) at 252. From this evidence, a reasonable inference could be drawn that Shaw aided Harrison in committing the theft in the Silverdale store by associating with Harrison and showing him how to commit a theft. *Cardenas-Flores*, 189 Wn.2d at 265-66. In fact, Shaw admits that the evidence showed he knew Harrison was going to commit a theft, but Harrison did not do it right.

The evidence and Shaw's admission showed more than mere presence and knowledge of criminal activity. *Truong*, 168 Wn. App. at 540. Viewed in the light most favorable to the State and drawing all reasonable inferences in favor of the State, a rational trier of fact could find beyond a reasonable doubt that Shaw aided Harrison in the theft of the phones from the Silverdale store. *Cardenas-Flores*, 189 Wn.2d at 265-66; *Rich*, 184 Wn.2d at 903.

10

Shaw argues that there was no evidence to show that he was "anything other than merely present in the store" and "took no actions that in any way facilitated [Harrison's] commission of the theft." Br. of Appellant at 19-20. Shaw cites to *State v. Asaeli*, 150 Wn. App. 543, 208 P.3d 1136, *review denied*, 167 Wn.2d 1001 (2009), in support of his claim that the evidence presented to show that he was an accomplice was insufficient because he was merely present. In *Asaeli*, the defendant, who was convicted of second degree murder as an accomplice, was found to only be present at the scene of the crime because he only had knowledge that some interaction between the principal and the victim was potentially going to occur, not that the principal was going to shoot the victim. 150 Wn. App. at 569-70.

Here, however, Shaw admits that the evidence shows he knew Harrison was going to commit a theft. That admission, along with his actions while in the Silverdale store and his admissions in the jail phone calls, show that Shaw was more than merely present in the store. Viewing the evidence in a light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Shaw occupied the employee while Harrison stole the phones. Therefore, we hold that sufficient evidence was presented to show that Shaw aided Harrison in committing the second degree theft.

D.      AGGRAVATING CIRCUMSTANCE

Shaw argues that substantial evidence does not support the jury's aggravating circumstance finding that he demonstrated an egregious lack of remorse. We disagree.

Under RCW 9.94A.535, the "court may impose a sentence outside the standard sentence range for an offense if it finds . . . that there are substantial and compelling reasons justifying an

exceptional sentence." The fact that the "defendant demonstrated or displayed an egregious lack of remorse" is an aggravating circumstance that can support a sentence above the standard range. RCW 9.94A.535(3)(q).

For this aggravating circumstance, "the lack of remorse must be of an aggravated or egregious nature." *State v. Ross*, 71 Wn. App. 556, 563, 861 P.2d 473, 883 P.2d 329 (1993), *review denied*, 123 Wn.2d 1019 (1994). Refusing to admit guilt or remaining silent is not an indication of lack of remorse. *State v. Russell*, 69 Wn. App. 237, 251, 848 P.2d 743, *review denied*, 122 Wn.2d 1003 (1993). Whether a sufficient quantity or quality of remorse is present in any case depends on the facts of the case. *Ross*, 71 Wn. App. at 563.

Here, in his jail phone calls, Shaw showed no remorse at all for his actions and blamed the situation on Harrison. He stated that "none of this . . . would have happened if I would have just been by myself" and that "I put myself in this situation by being with some unskilled [people]." CP at 126. Shaw also believed that what he did and the situation he was in was no big deal. He said that he was "not trippin [it's] nothing ya know," that he just "got caught up in some little sh**," that he "just gotta do this little time," and that "it's all whatever." CP at 126, 128-129. In making these statements, Shaw was not merely refusing to admit guilt or remaining silent. *Russell*, 69 Wn. App. at 251. Viewed in the light most favorable to the State, Shaw's numerous statements placing the blame on Harrison, minimizing his own actions, and cavalier attitude about the seriousness of what he had done was sufficient for a rational trier of fact to find the aggravating circumstance beyond a reasonable doubt. *Cardenas-Flores*, 189 Wn.2d at 265-66; *Rich*, 184 Wn.2d at 903; *Ross*, 71 Wn. App. at 563.

Shaw argues that his lack of remorse is far from the level found in *State v. Zigan*, 166 Wn. App. 597, 270 P.3d 625, *review denied*, 174 Wn.2d 1014 (2012), *State v. Erickson*, 108 Wn. App. 732, 33 P.3d 85 (2001), *review denied*, 146 Wn.2d 1005 (2002), and *State v. Stuhr*, 58 Wn. App. 660, 794 P.2d 1297 (1990), *review denied*, 116 Wn.2d 1005 (1991).[1]  However, whether a sufficient quantity or quality of remorse is present in any case depends on the facts of the case. *Ross*, 71 Wn. App. at 563.  The determination of egregiousness is case specific.  Thus, comparing the level of egregiousness found in the murder cases Shaw relies on to the level of egregiousness required in this second degree theft case is not controlling.

Shaw also argues that the State asserted egregiousness from his failure to admit guilt because he accused the Port Orchard employee of falsely calling him a thief and failing to return the stolen phone to the Port Orchard store.  However, the jury did not find the egregious lack of remorse aggravating circumstance for Shaw's second degree burglary conviction, which was for

---

[1] In *Zigan*, the defendant was convicted of vehicular homicide and given an exceptional sentence based on egregious lack of remorse.  166 Wn. App. at 599.  On appeal, the court held that the defendant's lack of remorse was egregious because he asked the victim's husband if he was "ready to bleed?" moments after the victim died, smiled and laughed when he talked to officers, joked with an officer that he might get killed too, and smiled and waved at inmates in jail and said, "if you hit someone on a motorcycle, don't get caught." *Id.* at 602-603.

In *Erickson*, the defendant was convicted of first degree murder and given an exceptional sentence based on egregious lack of remorse.  108 Wn. App. at 733, 740.  On appeal in the unpublished portion of its opinion, the court held that the exceptional sentence was justified because the defendant bragged and laughed about the murder, thought the killing was funny, and told police he felt no remorse. *Id.* at 733, 737-39.

In *Stuhr*, the defendant was convicted of first degree murder and given an exceptional sentence based on egregious lack of remorse.  58 Wn. App. at 662.  On appeal, the court upheld the exceptional sentence because the defendant "claimed that he had killed a dog the same night he killed the victim, [and] told the doctor he felt more sorry for [killing] the dog." *Id.* at 664.

No. 50163-5-II

the Port Orchard incident. The jury found that Shaw had an egregious lack of remorse for his second degree theft as an accomplice conviction, which was based on the Silverdale incident. Therefore, Shaw's argument is misplaced.

Based on Shaw's statements in his jail phone calls, a rational trier of fact could find beyond a reasonable doubt that Shaw demonstrated an egregious lack of remorse. Therefore, we hold that sufficient evidence was presented to show that Shaw demonstrated an egregious lack of remorse for his second degree theft conviction.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Sutton, J.

14