# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58307-1-II |
| Respondent, | |
| v. | |
| EVELYN ANN SCHANCE, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Evelyn A. Schance appeals her conviction for possession of burglary tools, arguing that the State did not prove that tools found in a stolen vehicle she was in possession of were for burglary. She further alleges there is a scrivener's error in the judgment and sentence and that two of her legal financial obligations (LFOs)—the crime victim penalty assessment (CVPA) and deoxyribonucleic acid (DNA) collection fee—should be stricken. We affirm Schance's conviction but remand for the trial court to strike the CVPA and DNA fee and correct the scrivener's error.

## FACTS

Woodland Police Officer Raymond Hanning noticed a vehicle parked in the driveway of a closed business. The vehicle was unoccupied and had a temporary Oregon license in the back window. There was a note under a windshield wiper stating that the driver ran out of gas and would be right back.

Hanning noticed the vehicle identification number (VIN) listed on the temporary license did not match the vehicle's VIN. He searched the vehicle's VIN and learned the vehicle had been reported stolen in Oregon. Hanning called for backup.

Schance returned to the vehicle where officers arrested her. In a search incident to arrest, officers located a wallet with the identification of another individual. Officers contacted the individual and learned that her purse and wallet had been stolen in Oregon. Officers also located inside the vehicle bolt cutters, small pliers/wire cutters, ceramic spark plugs (one with broken ceramic), a long wire with bent hooked ends, and a machete.

The State charged Schance with possession of a stolen vehicle, possession of stolen property in the second degree, and possession of burglary tools.

During trial, Hanning testified that while on patrol his attention was attracted to the vehicle because it was parked in a driveway of a closed business. The driveway was for trucks and it was odd for a passenger vehicle to be in the driveway, especially because the business was not open.

One of the responding officers, Brent Murray, testified that he did an area check to the nearest convenience store/gas station. He observed Schance at a nearby store parking lot just past the convenience store/gas station, carrying a backpack and a small gas can. He testified that he thought her behavior was suspicious and that it was odd that she walked past the convenience store/gas station. Murray next testified about the tools located inside the stolen vehicle. He testified that the spark plugs and broken ceramic can be used to break windows. He further testified that bolt cutters can be used to cut locks and chains. Wire cutters can be used to cut wires or fencing. Pliers can be used to gain entry. And the long rod can be used with a machete, as a tool to open locked door latches on a house or a car.

Christopher Sciacca, another responding officer, testified that the tools located in the stolen vehicle "could generally be used as a kit to access fences, vehicles." Rep. of Proc. (RP) at 201. He further testified that the tools were "kind of a key to the city . . . you could basically access . . . anything." RP at 201.

After the State rested, the defense moved for dismissal of all three charges, arguing the State's evidence failed to prove them beyond a reasonable doubt. Regarding the possession of burglary tools charge, counsel argued the tools found in the vehicle were legally possessed and there were no reports of any stolen or burgled cars in the area. The trial court denied the motion, noting that even though there was no "string of break ins or car prowls in the vicinity . . . we can't ignore . . . that the vehicle itself was listed as a stolen vehicle." RP at 219.

The trial court instructed the jury that a person commits the crime of making or having burglary tools when he or she has tools "used for the commission of burglary under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a burglary, or knowing that the same is intended to be so used." Clerk's Papers (CP) at 41.

A jury found Schance guilty as charged. However, on the judgment and sentence, the trial court listed one of the convictions as identity theft in the second degree instead of possession of stolen property in the second degree. The court also imposed a $500 CVPA and $100 DNA collection fee. After sentencing, the court entered an order finding Schance indigent.

Schance appeals.

ANALYSIS

I.    SUFFICIENCY OF EVIDENCE

Schance contends the State failed to prove beyond a reasonable doubt that she possessed burglary tools under circumstances evincing an intent to commit a burglary. We disagree.

In a challenge to the sufficiency of the evidence, our review is "highly deferential to the jury's decision." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). We ask whether, taking the State's evidence as true and drawing all reasonable inferences in the State's favor, any rational trier of fact could have found guilt beyond a reasonable doubt. *Id.* "Circumstantial evidence and direct evidence are equally reliable." *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

Under RCW 9A.52.060(1), a person is guilty of making or having burglary tools if he or she (1) possessed a tool adapted, designed, or commonly used for the commission of burglary and (2) "under circumstances evincing an intent to use or employ" the tools "in the commission of a burglary, or knowing that the same is intended to be so used, shall be guilty of making or having burglar tools." Similarly, the trial court instructed the jury that a person commits the crime of making or having burglary tools when he or she has tools "used for the commission of burglary under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a burglary, or knowing that the same is intended to be so used." CP at 41. A burglary occurs when a person enters or remains unlawfully "in a building" with intent to commit a crime against a person or property inside. CP at 41; *see also* RCW 9A.52.020.

Relying on *State v. Miller*, 90 Wn. App. 720, 954 P.2d 925 (1998), Schance argues the State did not prove she had an intent to commit a burglary. In *Miller*, James Miller entered an open self-service car wash, used bolt cutters and other tools to remove the locks from coin boxes,

4

and took money. *Id*. at 723. The State charged Miller with burglary, having burglary tools, and theft. *Id.* A jury convicted him of all three charges. *Id.* On appeal, Division III of this court reversed Miller's burglary and possession of burglary tools convictions. *Id.* at 730. The court found there were no circumstances that constituted burglary because the self-service car wash was open to the public and not contained within a building. *Id.* at 725.

Here, unlike in *Miller*, Schance parked a stolen vehicle, containing stolen property, in front of a closed business. She was observed walking around another business's parking lot and away from the nearest gas station. Schance then returned to the stolen vehicle outside the closed business. Murray testified that the tools located inside the stolen vehicle could be used to break windows. Sciacca testified that the tools "could generally be used as a kit to access fences." RP at 201. He further testified that the tools were "kind of a key to the city . . . you could basically access . . . anything." RP at 201.

Viewing this evidence in the light most favorable to the State, as we must, the reasonable inference is that Schance, as to prong two of RCW 9A.52.060(1) set forth above, possessed tools adapted or commonly used for burglary and there were circumstances, such as possessing a stolen vehicle, parking the vehicle at a closed business, and suspiciously walking around the parking lot of another business, evincing an intent to use or employ the tools for a burglary. Accordingly, sufficient evidence exists to support the jury's finding that Schance was guilty of possession of burglary tools.

II.     SCRIVENER'S ERROR ON JUDGMENT AND SENTENCE

Schance argues that even if her conviction is affirmed, we should remand the case with instructions to change the identity theft conviction on her judgment and sentence to possession of stolen property. The State concedes. We accept the State's concession.

"A scrivener's error is one that, when amended, would correctly convey the intention of the trial court as expressed in the record at trial." *State v. Starr*, 16 Wn. App. 2d 106, 110 n.3, 479 P.3d 1209 (2021) (emphasis omitted). A jury found Schance guilty of possession of stolen property in the second degree. However, on the judgment and sentence, the trial court listed the conviction as identity theft in the second degree. This appears to be a scrivener's error. Accordingly, the judgment and conviction must be remanded for correction.

III.     LFOs

Schance lastly argues that we should remand for the trial court to waive the CVPA and DNA collection fee based on recent legislative changes and because she is indigent. The State concedes that we should remand for the trial court to waive these fees. We agree with Schance and the State.

Recently, the legislature amended the LFO statutes allowing trial courts to waive certain fees and costs, particularly if a defendant is indigent at the time of sentencing. Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the crime victim penalty assessment on indigent defendants. The legislature also amended RCW 43.43.7541(2) to require waiver of a DNA collection fee imposed before July 1, 2023 upon the defendant's motion. LAWS OF 2023, ch. 449, § 4. We accept the State's concession that Schance was indigent. Accordingly, we remand for the trial court to strike the CVPA and DNA collection fee.

CONCLUSION

We affirm Schance's possession of burglary tools conviction but remand for the trial court to correct the scrivener's error in the judgment and sentence and to strike the CVPA and DNA collection fee.

58307-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Lee, J.

_____
Glasgow, J.